Rod N. Andreason (Bar No. 8853)
  *randreason@kmclaw.com*
Adam M. Kaas (Bar No. 13267)
  *akaas@kmclaw.com*
KIRTON | MCCONKIE
400 Kirton McConkie Building
50 East South Temple, Suite 400
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

Avery Samet (Admitted *Pro Hac Vice*)
  *asamet@samlegal.com*
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017
Telephone: (212) 490-4100
 Fax: (212) 490-4208

*Attorneys for Plaintiff Mrs. Fields Franchising, LLC*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC,<br>a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BEKTROM FOODS, INC.,<br>a North Dakota corporation,<br><br>Defendant. | **MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:14-cv-00776-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiff Mrs. Fields Franchising, LLC ("MFF"), by and through its counsel of record,

hereby respectfully moves the Court for a judgment on the pleadings against Bektrom Foods,

Inc. ("Bektrom") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Federal Rules") in MMF's favor both with respect to its own breach of contract claim against Bektrom and with respect to Bektrom's counterclaim.

### INTRODUCTION, PRECISE RELIEF SOUGHT, AND GROUNDS THEREFOR

This is an action for breach of a licensing agreement pursuant to which Bektrom could market and sell products bearing the "Mrs. Fields" trademark.   Based upon the parties' pleadings, this simple action raises no issues of fact and can be resolved based upon the parties' contract and the undisputed allegations.  By this motion, MFF seeks payment of the $754,488 in guaranteed payments not already made, plus contractually mandated interest, and dismissal of Bektrom's counterclaim for breach of the covenant of good faith and fair dealing.

The parties do not dispute that the May 1, 2011 Merchandising License Agreement (the "License Agreement") governs this dispute.  The parties also do not dispute that the License Agreement required Bektrom to pay MFF (a) quarterly royalties on sales of "Mrs. Fields" products (the "Royalty Payments") and (b) a fixed $920,000 guaranteed minimum, payable in yearly installments pursuant to a contractually set schedule (the "Guarantee").  The License Agreement allowed the Royalty Payments to be applied to the Guarantee, so that if they exceeded the Guarantee installment amount for any particular year, no further payment would be due.  Rather, an additional payment would be due at the end of the year only if the Royalty Payments fell short of the Guarantee amount, and only in the amount of that shortfall.

The parties agree that Bektrom made the first annual Guarantee installment as well as approximately $65,000 in quarterly royalty payments over the life of the License Agreement. The parties also agree that Bektrom failed to pay the second year's Guarantee installment; that

during that year MFF demanded payment of the Guarantee and that Bektrom did not pay; and that Bektrom failed to pay the Guarantee amount for year-three and that shortly thereafter MFF terminated the license.  Finally, the parties agree that the License Agreement provided that the full amount of the Guarantee would become due upon early termination of the License Agreement.

Thus, the pleadings do not dispute the existence of a valid License Agreement, that the License Agreement on its face it required payment of the Guarantee and that Bektrom failed to make the payments required by the License Agreement as demanded by MFF.  However, in an effort to stave off payment and open the door to discovery, Bektrom asserts the meritless and conclusory claims of waiver and breach of the covenant of good faith and fair dealing that it contends might excuse it from making the Guarantee payment.  Neither purported defense creates an actual factual dispute, and both can and should be rejected as a matter of law on the face of the pleadings.

In short, Bektrom does not dispute that it breached the License Agreement's express terms or that MFF followed the terms of the Agreement.  Instead, Bektrom alleges that MFF agreed to give up over $750,000 in guaranteed payments in exchange for nothing, and that MFF should be required to abide by unspecified, extra-contractual obligations "implied" by the covenant of good faith and fair dealing.  While MFF vigorously disputes the defense and the counterclaim, the pleadings on their face show that MFF is entitled to payment notwithstanding Bektrom's theories.

## STATEMENT OF FACTS

The following uncontested facts are taken from the pleadings.

*The Allegations in the Complaint*

1.     The License Agreement permitted Bektrom to manufacture, sell, and/or distribute spice shakers, spice grinders, dry baking mixes, pancake mixes, biscuit mix, brownies and other baking mixes under the trademarked Mrs. Fields brand.  (License Agreement at § 4.)[1]  In exchange, it required Bektrom to make two streams of payments to MFF: (1) a royalty of (a) five percent (5%) of the Net Sales (as defined in the License Agreement) of all baking mixes and gift sets shipped and (b) eight percent (8%) of the Net Sales of all spice shakers and grinders shipped (collectively, the "Royalties") within 30 days of the end of each quarter (Complaint ¶¶ 8-9; Answer at ¶¶ 8-11); and (2) a minimum of $920,000 in guaranteed payments (the "Guarantee") according to a fixed schedule of yearly installments, which would be applied against the Royalties (Complaint at ¶ 10; Answer at ¶¶ 9-11):

> Year 1: $100,000 by September 30, 2012;
>
> Year 2: $150,000 by September 30, 2013;
>
> Year 3: $200,000 by September 30, 2014;
>
> Year 4: $220,000 by September 30, 2015; and
>
> Year 5: $250,000 by September 30, 2016.

(License Agreement at § 10.)   The License Agreement provided for default interest if any

---

[1] The License Agreement is incorporated by reference into the Complaint as well as the Answer and Counterclaim and is attached as Exhibit A to this Motion.  *See Borde v. Board of County Comm'rs of Luna County, N.M.*, 514 Fed. Appx. 795, 799 (10th Cir. 2013) (unpublished) (holding that contracts referred to in complaint could be considered on a Rule 12(c) motion).

payment was missed by Bektrom (see below) and also provided that the entire remaining unpaid portion of the Guarantee would become due if MFF was forced to terminate the License Agreement due to non-payment.  (License Agreement at §§ 20.5.3, 27.5.)

2.      Bektrom paid the first $100,000 installment on the Guarantee by September 30, 2012, but failed to pay any of the later installments on the Guarantee.  (Complaint at ¶¶ 13, 14, 17; Answer at ¶¶ 13, 14, 17.)  Specifically, Bektrom failed to meet the $150,000 Guarantee installment by September 30, 2013.  (Complaint at ¶ 14; Answer at ¶ 14.)  Bektrom paid only the quarterly Royalty Payments, a total of just $65,512, which it represented to be 5% of its Net Sales.  (Complaint at ¶¶ 14-15; Answer at ¶¶ 14-15.)

3.      MFF demanded payment of the Guarantee installment default on August 27, 2014, which Bektrom refused to do.  (Complaint at ¶ 16; Answer at ¶ 16.)  After this demand for payment, Bektrom again failed to pay the $200,000 Guarantee installment due September 30, 2014.  (Complaint at ¶ 17; Answer at ¶ 17.)  Accordingly, MFF terminated the License Agreement on October 23, 2014 pursuant to Section 26.4, and the unpaid Guarantee installments of $754,488 were immediately accelerated.  (Complaint at ¶¶ 18-20; Answer at ¶¶ 18-20.)

*The Allegations in the Answer and Counterclaim*

4.      According to Bektrom, "[MFF] waived any claim to minimum 'Guarantees' under the License Agreement because it agreed after the execution of the License Agreement to accept royalty payments based on actual sales (which Bektrom has already paid) in lieu of the minimum 'Guarantees.'"  (Answer at Ninth Affirmative Defense; *see also id.* at ¶¶ 14, 16, 17.) However, the License Agreement expressly provided that MFF's acceptance of Royalty Payments would <u>not</u> act as a waiver of the Guarantee:    "[MFF's] acceptance of any Royalty

Report or Royalty Payment by [Bektrom] shall not act as a waiver of any of Licensor's rights hereunder. . . ." (License Agreement at § 20.4.)

5.      Moreover, the License Agreement provided numerous express limitations on waivers and modifications in order to protect MFF's interests.  For example:

- "Failure of the [MFF] to insist upon strict performance of any of the covenants or terms hereof to be performed by [Bektrom] shall not be construed to be a waiver of any such other covenants or terms." (*id.* at § 31);

- "No waiver by either party of a breach or default hereunder shall be deemed waiver by such Party of a subsequent breach or default of a like or similar nature.  The terms of this Agreement shall not be modified except by an agreement in writing signed by both parties hereto." (*id.* at § 39); and

- "This Agreement shall constitute the entire understanding of the parties with respect to the subject matter contained herein. . . ." (*Id.* at § 42.)

In addition, the License Agreement contemplated payment defaults by Bektrom and provided for specified default interest in such event:  "[T]ime is of the essence regarding all payments due hereunder and Licensee shall pay interest . . . on any delinquent Advance, Royalty or Guarantee payments hereunder, at two percent (2%) plus the 'prime rate' established by the Federal Reserve Bank in San Francisco, compounded annually . . . from the date on which such payment was due. . . ." (*Id.* at § 20.5.3.)

6.      In addition to the waiver defense, Bektrom also alleges that "Bektrom's performance under the License Agreement was excused by [MFF's] breaches of the implied covenant of good faith and fair dealing inherent in the License Agreement, as detailed in the Counterclaim." (*Id.* at ¶ 14; *see also id.* at ¶¶ 16, 17.)  In its Counterclaim, Bektrom admits that Bektrom covenanted in the License Agreement to obtain MFF's approval before manufacturing, offering for sale, or otherwise using various promotional materials or artwork (the "Collateral

6

Materials"), or Licensed Products (together with the Collateral Materials, the "Artwork/Samples"). (License Agreement at §§ 21.1, 21.2; Counterclaim at ¶ 8.)   Bektrom additionally agreed that the Collateral Materials "shall be of the highest standard and quality" and that MFF "shall have absolute and final approval of all such Artwork/Samples." (*Id.*)  The parties agreed on a default rule whereby Artwork/Samples would be deemed denied unless MFF, within its "sole discretion," affirmatively approved them in writing within 10 days of receipt. (License Agreement at §§ 14, 21.2; Counterclaim at ¶ 9.)  Bektrom was required to produce the Samples/Artwork for which it sought approval at its own cost (*id.* at § 21.2.1), and MFF could deny approval after receiving the final, as-manufactured Samples/Artwork.  (*Id.* at § 21.2.)

7.     According to Bektrom, MFF breached the covenant of good faith and fair dealing implied in the License Agreement by:

- "failing to review, let alone approve, Artwork/Samples for Licensed Products submitted by Bektrom, or otherwise failing or refusing entirely to respond to Bektrom's requests for review and approval of Artwork/Samples for Licensed Products;"

- "improperly withholding approval for Artwork/Samples for Licensed Products submitted by Bektrom in an attempt to extract payments from Bektrom;"

- "initially granting approval for certain Artwork/Samples for Licensed Products submitted by Bektrom only to later withdraw approval after Bektrom had expended resourced developing and manufacturing the Licensed Products;" and

- "refusing entirely to review or approve Artwork/Samples for spice shakers submitted by Bektrom."

(Counterclaim at ¶¶ 10; *see also id. at* ¶ 14.)  Bektrom alleges that this conduct "[d]eprived [Bektrom] of its ability to sell Licensed Products . . . [and] Bektrom was unable to generate the sales revenue to service the Guarantee Installment Payments under the License Agreement." (*Id.*

7

at ¶ 15.)   The Answer and Counterclaim contain no specifics regarding when the Artwork/Samples were submitted, when MFF denied those Artwork/Samples, and why MFF denied the submissions.   In any event, even accepting the factual allegations as true, the Counterclaim pleads no facts indicating whether MFF took the above-referenced actions in bad faith.

## LEGAL STANDARD

Federal Rule 12(c) provides that "after the pleadings are closed . . . any party may move for judgment on the pleadings."  Fed. R. Civ. Proc. 12(c).  A plaintiff may move for judgment on the pleadings.  *See*, *e.g.*, *Winsness v. Campbell*, No. 2:04-cv-904-TS, 2006 WL 463529, *8 (D. Utah Feb. 24, 2006) (unpublished).   "A motion for judgment on the pleadings is designed to dispose of cases where material facts are not in dispute and judgment on the merits can be based on the content of the pleadings and any facts of which the court will take judicial notice."  *Hamilton v. Cunningham*, 880 F. Supp. 1407, 1410 (D.  Colo. 1995).  A motion for judgment on the pleadings is governed by the same standards as a motion to dismiss pursuant to Federal Rule 12(b)(6).  *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006).  For purposes of the motion, the well-plead material allegations of the non-movant's pleadings are taken as true.  *Hamilton*, 880 F. Supp. at 1410.  Thus, with respect to MFF's claim against Bektrom, Bektrom's denials, if well-pled, are taken to be true, whereas with respect to its Counterclaim, its allegations are taken to be true.  The counterclaim, however, must "state[] a plausible claim for relief" to survive, just as it would for a Rule 12(b)(6) motion.  *Asebedo v. Kansas State Univ.*, 559 Fed. Appx. 668, 670 (10th Cir. 2014) (applying Federal Rule 12(c)) (unpublished) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

### A. *The Pleadings Demonstrate that Bektrom Has No Defense to MFF's Breach of Contract Claim*

Based upon the pleadings, the existence of the License Agreement and its terms are not contested.  Bektrom acknowledges that the License Agreement provides for Guarantee payments.  Similarly, Bektrom does not deny that it has not paid the Guarantee payments.  Instead, it alleges that the Guarantee payments were waived by "because [MFF] agreed after the execution of the License Agreement to accept royalty payments based on actual sales (which Bektrom has already paid) in lieu of the minimum 'Guarantees.'"  (Answer at ¶ 14; *see also id.* at ¶¶ 16, 17.)  Bektrom also asserts that MFF breached a condition precedent by violating the implied covenant of good faith and fair dealing, which is addressed in the following section seeking judgment on Bektrom's Counterclaim.

### (i)   *No Waiver Can Be Found as a Matter of Law*

Under the express terms of the License Agreement, MFF was entitled to *both* receive Royalty Payments and, if the Royalty Payments were insufficient to equal or exceed the Guarantee amounts, additional payments in the amount of any shortfall.  Bektrom's self-serving "waiver" claim seems to allege that MFF "agreed" to give up its right to the minimum Guarantee amounts (at an unspecified time, by an unspecified means not claimed to have been reduced to writing) for no reason and in return for absolutely nothing.  MFF cannot contend it made the one Royalty Payment it did "in lieu" of its obligation to make up any shortfall in the Guarantee amount, since it was obligated to make the Royalty Payment in any event and makes no allegation to the contrary.  (For example, there is no allegation that Bektrom offered to pay or did pay royalties at a higher percentage of sales than the License Agreement specified in return for

being excused from the minimum Guarantee amounts.)  Nor can MFF's acceptance of a Royalty Payment it was already entitled to receive under the express terms of the License Agreement be characterized as a waiver by conduct.  Bektrom's position is absurd as saying that a landlord's acceptance of a rent payment for January could or would work a waiver of its right to be paid rent for February.

In Utah, a waiver cannot be found unless the party asserting it shows a "distinct" intention to relinquish a right.  *Sotor's Inc. v. Deseret Federal Sav. & Loan Assn.*, 857 P.2d 935, 942 (Utah 1993).  Here, the License Agreement expressly provided that the acceptance of Bektrom's quarterly Royalty Payments would not constitute a waiver of MFF's rights to the Guarantee.  (License Agreement at § 20.4.)  The License Agreement also provided that MFF's failure, if any, to insist on strict performance of the $150,000 Guarantee installment due September 30, 2013 does not constitute a waiver of the $200,000 Guarantee payment due September 30, 2014 (*id.* at §§ 31, 39).  In fact, the License Agreement provides MFF with protection against late payment in the form of default interest.  (*Id.* at § 20.5.3.)  MFF sought payment of the $150,000 Guarantee payment by sending a Notice of Default, which apprised Bektrom that MFF both wanted payment of that installment as well as prompt payment of the $200,000 Guarantee payment.  Within one month of Bektrom's failure to pay the $200,000 year-three Guarantee installment, MFF issued a Notice of Termination and initiated this action.

That Bektrom made a Royalty Payment and MFF accepted it cannot possibly support a waiver theory since payment of the Royalties is consistent with – and, in fact, required under – the unmodified terms of the License Agreement and would occur on different dates from those for the Guarantee payments.  *Compare* License Agreement at § 20.1 *with* License Agreement at

§ 10. *See Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975) (holding that Statute of Frauds barred enforcement of alleged modification to reduce the amount of payments due on an installment contract where the reduced payments could be attributed to the original contract and did not unequivocally relate to any orally modified contract); *Coates v. Wells Fargo Home Mortg., Inc.*, No. 2:11-cv-67-TS, 2011 WL 3563005, *2 (D. Utah Aug. 10, 2011) (unpublished) (granting defendant's motion for judgment on the pleadings since (i) the alleged oral modification which provided that the plaintiff could make reduced loan payments was not in writing, (ii) the payments could be attributed to plaintiff's obligations under the original loan agreement rather than the allegedly modified agreement, and (iii) the alleged modification was not pled with sufficient detail).

Even in the event that the party owed money agrees to alternative payment arrangements for one payment (or even multiple payments), that is insufficient under Utah law to plead a waiver of an upcoming installment payment, particularly since the Guarantee payments are a central feature of the License Agreement. *See Shadewell Grove IP, LLC v. Mrs. Fields Franchising*, No. Civ. A. 1691-N, 2006 WL 1375106 (Del. Ch. May 8, 2006) (unpublished) (decided under Utah law) (holding that the licensor had not waived timely payment of an installment payment where the relevant contracts had nonwaiver provisions and the licensor had attempted to get prompt payment of each installment despite its prior willingness to agree to payment plans).

In addition, Bektrom's waiver argument fails because the License Agreement provides that it will be performed over a period of over five years and is thereby governed by the Utah Statute of Frauds. *See* License Agreement at § 5; *MediaNews Group, Inc. v. McCarthey*, 494

F.3d 1254, 1263 (10th Cir. 2007) ("As alleged, the [oral] Family Agreement contains terms that cannot be performed within one year of acceptance.  As such, it falls within the reach of Utah's statute of frauds."); UTAH CODE § 25-5-4(1)(a).  A "waiver" of a right to one kind of payment in exchange for a different type of payment is not enforceable in a contract governed by the Statute of Frauds.  *See Iota, LLC v. Davco Mgmt. Co., LC*, 284 P.3d 681, 691 (Utah Ct. App. 2012) ("[Defendant] asserts that Plaintiffs waived their right to declare a default when the maturity dates passed without payment because they agreed to a one-year extension on the maturity dates of the promissory notes.   Because we have determined that any such agreement was unenforceable due to its failure to comply with the statute of frauds, Davco's waiver argument fails."); *UBS Bank USA v. Wolstein Business Enter., L.P.*, No. 2:08-cv-0911 CW-SA, 2011 WL 129868, *13 (D. Utah Jan. 14, 2011) (unpublished) (holding under Utah law that alleged oral waiver of right to liquidate collateral was not enforceable because the statute of frauds governed the original agreement).   Moreover, here the payment supposedly made "in lieu" of what was contractually owed was itself already independently contractually owed.[2]

---

[2] The acceptance of reduced payments does not change the payor's obligations under a contract precisely because those payments are already owed.  *See Brockband v. JPMorgan Chase Bank, N.A.*, No. 2:11-cv-671-DAK, 2012 WL 1142933, *3 (D. Utah April 4. 2012) (unpublished) (dismissing claims against residential mortgage lender because "acceptance of modified payments does not constitute sufficient consideration to support formation of a contract under Utah law.  Without consideration, there is no enforceable contract. . . .") (*citing Osmond v. Litton Loan Serv.*, No. 1:10-cv-11, 2011 WL 1988403, *2 (D. Utah May 20, 2011) (unpublished)); *see also MidAmerica Constr. Mgmt., Inc. v. MasTec North Am., Inc.*, 436 F.3d 1257, 1267-68 (10th Cir. 2006) (applying Texas and New Mexico law) (holding that a partial payment neither created an ambiguity in the contract nor provided evidence sufficient to overcome the parties' intentions as expressed in the contract).

*B.  The Counterclaim Fails to Allege a Breach of Implied Covenant of Good Faith*

Bektrom cannot cite and has not cited a single explicit provision of the License Agreement which was violated, and likewise has not provided any factual allegations that, taken to be true, could support a reasonable inference of bad faith conduct on the part of MFF.  Rather, the parties expressly agreed that MFF would be able to approve Artwork/Samples in its sole discretion.  Thus the purported breach of the implied covenant of good faith both fails to state a claim (for purposes of the Counterclaim) and fails to establish any valid defense (such as alleged failure of a condition precedent) to MFF's own claim against Bektrom.   In short, the Counterclaim fails as a matter of law for the following reasons:

- The License Agreement contains no provisions – and Bektrom has cited none – which have been violated by MFF.

- Requiring MFF to approve all Artwork/Samples would contradict the express terms of the License Agreement.

- MFF's alleged conduct at best shows that MFF was properly exercising its rights under the License Agreement.

- The Counterclaim fails to provide sufficient factual detail to render its claim plausible or sufficiently well-pled.

- The Counterclaim alleges conduct by MFF that, if true, would be contrary to MFF's own economic interests.

Bektrom failed to make the Guarantee payments as it agreed to do, and cannot excuse that failure by seeking to blame MFF.  While the implied covenant of good faith is implied in most, if not all, contracts, it "cannot be construed, however, to establish new, independent rights

13

or duties not agreed upon by the parties.  Nor can a covenant of good faith be used to nullify a right granted by contract to one of the parties or to require a party vested with a contract right to exercise that right in a manner contrary to that party's legitimate self-interest."  *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (citation omitted); *see also Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047-47 (Utah Ct. App. 1994).  In Utah, it plays a "limited role" and the Utah courts "have set a high bar for the invocation of a new covenant" to be implied into a contract.  *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816-17 (Utah 2011).  In addition, "[a] court will not . . . make a better contract for the parties than they have made for themselves.  An express agreement or covenant relating to a specific contract right excludes the possibility of an implied covenant of a different or contradictory nature."  *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 505 (Utah 1980) (citations omitted).  Further, the Utah courts "will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract."  *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004) (citation omitted) (dismissing claim that retail tenant had acted in bad faith by relocating across the street and continuing to pay rent in order to prevent a competitor from occupying the space because the lease did not require the tenant to operate continuously in the space).

Here, the License Agreement provides MFF with the right to approve, disapprove, or remain silent with respect to the Artwork/Samples submitted by Bektrom.  The License Agreement gives MFF the right to decide whether to approve the Artwork/Samples in its "sole discretion" and provides that silence constitutes disapproval.  (License Agreement §§ 14, 21.2.) The License Agreement does not provide that MFF would relinquish its exclusive right to control

the quality and content of items utilizing its intellectual property – in fact, it explicitly provides for the opposite. *See Rio Algom*, 618 P.2d at 505 ("A duty of good faith does not mean that a party vested with a clear right is obligated to exercise that right to its own detriment for the purpose of benefitting another party to the contract.") Similarly, the License Agreement does not have any clauses requiring written responses from MFF to its submissions, deeming silence to be acceptance, or providing that approval will not be unreasonably withheld. *See Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 818 (Utah 2011) (holding that there was no breach of covenant of good faith and fair dealing even though plaintiff asserted that defendant had orally promised to provide marketing materials and such materials were purportedly "absolutely necessary" to meet the contract's performance guarantees); *Best Rate Towing & Repair, Inc. v. Ziplocal, L.P.*, No. 2:11-cv-345-DAK, 2012 WL 627668, *4 (D. Utah Feb. 24, 2012) (unpublished) (dismissing claim for failure to meet plaintiff's desired distribution levels where contract provided defendant with the discretion about the level of distribution and contained no guarantee as to distribution). Further, Bektrom provides no allegations that Bektrom and MFF conducted business with each other in a way that all requests to modify the Artwork/Samples would be reviewed and approved. Finally, to the extent that Bektrom complains that it expended resources to create the Artwork/Samples, the License Agreement provides that Bektrom would manufacture Artwork/Samples for MFF's review at its own expense before final approval would be given. (License Agreement at §§ 21.2, 21.2.1.)

The Answer and Counterclaim provide absolutely no factual allegations supporting a finding that MFF acted in bad faith and without business justification. To start with, absolutely no factual detail whatsoever is provided as to what proposed artwork was submitted when, and

what made MFF's failure to approve it allegedly unreasonable. *See Baker v. Holt*, 498 Fed. Appx. 770, 773 (10th Cir. 2012) (unpublished) ("Although the Amended Complaint asserts misconduct by the district attorney during Plaintiff's hearing in the [court], no specifics are provided. These 'naked assertions devoid of further factual enhancement' do not suffice to state a cause of action.") (quoting *Ashcroft v. Iqbal*, 550 U.S. 662, 667 (2009)). Just as importantly, no facts are alleged that make this claim "plausible." *See Burnett v. Mortg. Elec. Registration Systems, Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013) (upholding dismissal of claims because "[the plaintiff] has not stated sufficient factual allegations here to 'nudge [her] claims . . . across the line from conceivable to plausible.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Counterclaim does not say when any Artwork/Samples were submitted, when MFF denied those Artwork/Samples, and why MFF denied each submission. No motive for wrongful or unreasonable failure to consent is alleged or can be reasonably be inferred. MFF had a legitimate right to protect its brand image and intellectual property by requiring that only approved artwork be used, but had nothing to gain from refusal to consent to appropriate artwork or from obstructing Bektrom's ability to sell as much as possible. Again, the Guarantee amounts were minimums – MFF stood to gain if Bektrom sold enough product that the Royalty Payments exceeded those minimums. The more money Bektrom made, the more MFF would make under the Licensing Agreement, making the conclusory claim that it sabotaged Bektrom's business for no reason implausible on its face. According to Bektrom, MFF waived its right to the Guarantee payments and was content only to be paid the Royalty Payments, and then decided to sabotage its ability to obtain Royalty Payments as well. This makes no sense, and is not "plausible" within the meaning of *Iqbal*, *Twombly*, and *Burnett*.

In any event, the fact that Bektrom was allegedly harmed by the disapproval of its Artwork/Samples is wholly insufficient to state a claim for breach of the covenant of good faith and fair dealing: "It cannot be adopted as a general precept of contract law that, whenever one party to a contract can show injury flowing from the exercise of a contract right by the other, a basis for relief will be somehow devised by the courts." *Ted R. Brown and Assocs., Inc. v. Carnes Corp.*, 753 P.2d 964, 971 (Utah Ct. App. 1988) (quoting *Mann v. Am. Western Life Ins. Co.*, 586 P.2d 461, 464 (Utah 1978)). *See also Miller Auto. Corp. v. Jaguar Land Rover North Am., LLC*, 471 Fed. Appx. 37, 40 (2d Cir. 2012) (unpublished) (upholding dismissal of complaint where the franchisor had allegedly required unreasonable facility upgrades as a condition to approval of franchisee's relocation, but the complaint failed to allege fraud, misrepresentation or improper motive by the franchisor); *In re Sizzler Restaurants Intern., Inc.*, 225 B.R. 466, 477 (Bankr. C.D. Cal. 1998) (holding that franchisor's decision to discontinue a buffet concept did not give rise to a claim in favor of the franchisee).

Further, Bektrom must allege *facts* supporting some sort of bad faith on the part of MFF beyond conclusory assertions. *Rio Algom*, 618 P.2d at 505 ("The parties to a contract must deal fairly and honestly with each other."); *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (quotation omitted). As already noted, no plausible motive whatsoever is alleged. The allegation that MFF sought payment of amounts owing to MFF does not establish any sort of bad faith. "[T]here is no violation of the duty of good faith, as a matter of law, when a party is simply exercising its contractual rights." *Howe v. Professional Manivest, Inc.*, 829 P.2d 160,

163 (Utah Ct. App. 1992) (citation omitted) (noting that lessors were not obligated to consent to every lease assignment).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant judgment on the pleadings in MFF's favor on its claim for breach of contract and against Bektrom's Counterclaim, and awarded such other and further relief as it may find appropriate.

DATED this 25th day of February, 2015

<div style="margin-left:40%;">

Respectfully submitted,

KIRTON MCCONKIE

/s/  Adam M. Kaas_____
Rod N. Andreason
Adam M. Kaas

Avery Samet
STORCH AMINI & MUNVES PC

*Attorneys for Plaintiff Mrs. Fields*
*Franchising, LLC*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2015, I caused a true and correct copy of the foregoing **MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT** to be delivered by the method indicated below to the following:

|       |                   |                                      |
|-------|-------------------|--------------------------------------|
| [  ]  | U.S. MAIL         | David M. Bennion                     |
| [  ]  | HAND DELIVERY     | *dbennion@parsonsbehle.com*          |
| [  ]  | FAX TRANSMISSION  | Zack L. Winzeler                     |
| [  ]  | FEDERAL EXPRESS   | *zwinzeler@parsonsbehle.com*         |
| [ X ] | CM/ECF            | Parsons Behle & Latimer              |
|       |                   | 201 South Main Street, Suite 1800    |
|       |                   | Salt Lake City, UT  84111            |

/s/ Adam M. Kaas