IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| MRS. FIELDS FRANCHISING | ) |
| a Delaware limited | ) |
| liability company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) 2:14-CV-00776BSJ |
| BEKTROM FOODS a North | ) |
| Dakota corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

BEFORE THE HONORABLE BRUCE S. JENKINS

April 15, 2015

Motion for Judgment on the Pleadings

Laura W. Robinson, RPR, FCRR, CSR, CP
351 South West Temple
8.430 U.S. Courthouse
Salt Lake City, Utah 84101
(801)328-4800

**Appearances of Counsel:**

For the Plaintiff:      Rod N. Andreason
                            Attorney at Law
                            Kirton McConkie
                            50 East South Temple
                            Suite 400
                            Salt Lake City, Utah 84111

For the Defendant:      David M. Bennion
                            Zack L. Winzeler
                            Attorneys at Law
                            Parsons Behle & Latimer (UT)
                            201 S. Main Street
                            Suite 1800
                            Salt Lake City, Utah  84145

1              **Salt Lake City, Utah April 15, 2015**

2                          **\* \* \* \* \***

3          THE COURT:  Then let's turn to Mrs. Fields Franchising

4     versus Bektrom Foods, here today on a motion for judgment on

5     the pleadings and also for scheduling.

6          Those who are making appearances, if you will be kind

7     enough to make a record for us, tell us who you are and whom

8     you represent.

9          MR. ANDREASON:  Your Honor, Rod Andreason, Kirton and

10    McConkie, on behalf of the plaintiff, Mrs. Fields

11    Franchising, LLC.

12          THE COURT:  Okay.

13          MR. BENNION:  Good afternoon, Your Honor.  David

14    Bennion on behalf of the defendant Bektrom Foods.

15          MR. WINZELER:  And Zack Winzeler also on behalf of

16    Bektrom Foods.

17          THE COURT:  Okay.  You go ahead.

18          MR. ANDREASON:  Would you like me to go ahead with the

19    motion, Your Honor?

20          THE COURT:  I'm sorry?

21          MR. ANDREASON:  Did you want me to go ahead on the

22    motion?

23          THE COURT:  Yes.

24          MR. ANDREASON:  Thank you.  Your Honor, it is often

25    easier for me to talk first about what is undisputed before

1      getting to what is disputed, so I'll just go over a couple

2      of quick points that way.  The parties don't dispute that

3      the license agreement is a valid contract, that it required

4      Bektrom to make certain guaranteed payments.  That Bektrom

5      didn't make those payments.  And --

6          THE COURT:  Well, how much were they?

7          MR. ANDREASON:  The total payments, Your Honor?

8          THE COURT:  Sure.

9          MR. ANDREASON:  The payments that are outstanding are

10     about $750,000.00.

11         THE COURT:  And how much on a periodic basis?

12         MR. ANDREASON:  I believe it was $100,000.00 was the

13     amount of each -- in each period, Your Honor.

14         THE COURT:  Okay.  And we're talking about how many

15     periods?

16         MR. ANDREASON:  I believe it was -- now you're going

17     to test me, Your Honor, I could look that up, it was several

18     periods, I believe it was five, but I could look that up if

19     would you like.

20         Although it gets us a little past the point in the

21     sense, Your Honor, that that is not really disputed, the

22     parties don't have an issue with that or that Bektrom failed

23     to make the payments themselves, or that the agreement makes

24     the guaranteed payments all of them that are due, due in

25     full on termination.  What is disputed though here is

1    whether or not we can have a judgment on the pleadings when

2    there is a defense of waiver in a claim for the breach of

3    the covenant of good faith and fair dealing.

4         THE COURT:  Well, how much are you asking for?

5         MR. ANDREASON:  $750,000.00 Your Honor, roughly.

6         THE COURT:  You say that is undisputed.

7         MR. ANDREASON:  That I have seen no dispute on that

8    amount, yes, Your Honor, that is correct.

9         THE COURT:  Okay.

10        MR. ANDREASON:  So the issue in our view, Your Honor,

11   is whether the defense of waiver in the claim for breach of

12   the covenant of good faith and fair dealing prevents

13   judgment on the pleadings because waiver under the covenant

14   of good faith involved fact intensive inquiries, or in other

15   words, because waiver of the covenant of good faith are

16   typically factual inquiries are they insulated from the

17   pleading requirements of *Twombly* and *Iqbal.*  And we would

18   submit, Your Honor, that the answer to that question is a

19   resounding no.  While the fact inquiry may be involved in an

20   analysis of the claim on summary judgment or otherwise,

21   viewing the pleadings, or on a motion to dismiss, as you

22   know the same standard, requires that they be sufficiently

23   pled.  Even waiver and the covenant of good faith and fair

24   dealing must comply with *Twombly* and *Iqbal.*

25        As the court is aware, *Twombly* held some pretty new

1    things when it came out.  It was a pretty landmark decision

2    by the United States Supreme Court.  Among other things the

3    court held that a plaintiff's obligation to provide the

4    grounds of his entitlement to relief requires more than

5    labels and conclusions.  The court also held that courts are

6    not bound to accept as true a legal conclusion couched as a

7    factual allegation.

8         After that, *Iqbal* came forth and issued, or outlined

9    rather, a two-pronged approach based on *Twombly* stating that

10   there are two working principles under -- that underlie, the

11   court says, our decision in *Twombly.*  First the tenet that a

12   court must accept as true all of the allegations contained

13   in the complaint is inapplicable to the legal conclusions.

14   Second, only a complaint that states a plausible claim for

15   relief survives a motion to dismiss.

16        Now in both *Twombly* and *Iqbal* the court proceeded or

17   rather began its analysis after stating those standards

18   identifying the allegations in the complaint that are not

19   entitled to assumption of truth.  So I recommend that we do

20   that also in this case.  Does Your Honor have a copy of the

21   answer and counterclaim that was filed in this case?  I

22   would like to look at that.  In a particular, on Page 5

23   where waiver is discussed, the defense of waiver, this is

24   how it is stated exactly, Your Honor.  Mrs. Fields waived

25   any can claimed to minimum guarantees under the license

1    agreement because it agreed after the execution of a license

2    agreement to accept royalty payments based on the actual

3    sales which Bektrom has already paid in lieu of the minimum

4    guarantees.  So under prong one, Your Honor, we ask what are

5    the facts as opposed to the conclusions?  Frankly, Your

6    Honor, there are no facts except for potentially that the

7    parties agreed to something.  But reaching an agreement

8    itself is a conclusion there is nothing stating, for

9    example, who within Mrs. Fields or Bektrom were involved in

10   such an agreement.  How it took place.  Was it orally?  Was

11   it in writing?  What kind of writing?  What was the actual

12   fact that support this event, this conclusion, that an

13   agreement was reached to waive $750,000.00 in amounts owed.

14        Importantly, this guarantee for this amount of money

15   was not some ancillary condition to the agreement, it is

16   actually the primary method of payment.  In sum, there are

17   no facts in this waiver defense, Your Honor, only those

18   conclusions.  Prong two on plausibility.  Is this claim,

19   this defense asserted of waiver, plausible?  Well, Your

20   Honor, they're stating that Mrs. Fields waived its minimum

21   guarantee, the primary source of funding, in order to get

22   something that was already entitled to, royalty payments.

23   Why would Mrs. Fields waive one of the things that it was

24   entitled to in order to get the other?  It is not plausible

25   on its face.  Why would Mrs. Fields agree to permanently

1    give up over $750,000.00 in guaranteed payments?  Why would

2    it do so in exchange for zero consideration?  Why would it

3    do so contradicting three specific terms of the license

4    agreement that state -- that it is entitled to that money

5    and that there is no waiver by the parties except in writing

6    signed and executed by the parties, or that waiver by one

7    party as to one item doesn't constitute waiver as to any

8    other item.  Sections 20.4, 31 and 39 all speak to those,

9    Your Honor, and we can look at those specifically but those

10   are before you in the brief.

11       So under the waiver defense, we would submit, Your

12   Honor, that there are no facts and it is not plausible under

13   *Twombly* and *Iqbal.*

14       Moving to the covenant of good faith and fair dealing,

15   if you look at the counterclaim, Your Honor, and feel free

16   to look at that in front of you, there is only one paragraph

17   that supplies the entire allegations of the counterclaim

18   that we could look to to see if there are one, facts, as

19   opposed to conclusions, and two, plausibility.

20       Here is what it says.  Mrs. Field's regularly misused

21   its discretion under Section 21.2 in the following

22   non-exhaustive ways.  And the first one is failing to review

23   let alone approve Artwork/Samples for license product

24   submitted by Bektrom, or otherwise failing or refusing

25   entirely to respond to Bektrom's requests for review and

1    approval of Artwork/Samples for licensed products.  Let's

2    talk about that first one for a moment.

3         There is nothing in that statement that is a fact.  It

4    is a conclusion that Bektrom believes or is asserting that

5    Mrs. Fields failed to do something.  What action regarding

6    what submissions, what artwork samples.  Your Honor, we

7    don't know how it failed to do that, and that is the factual

8    underpinning that *Twombly* and *Iqbal* requires.  Were these

9    actually submitted to Mrs. Fields?  When did such submission

10   occur?  Did the artwork meet any of the standards in the

11   license agreement for submission in the first place?  If

12   Mrs. Fields failed or refused to do something, did Bektrom

13   complain about it?  How did it do that?  Did it get a

14   response?  The very fact that Bektrom uses the words or

15   otherwise to describe this conclusion indicates that it is

16   not sure and it doesn't have the facts for it.

17        The second part of this photograph 10 says that

18   Mrs. Fields misuses its discretion by quote improperly

19   withholding approval for Artwork/Samples for licensed

20   products submitted by Bektrom in an attempt to extract

21   payments from Bektrom.

22        Now, let's look at that allegation.  Improperly

23   withholding approval is not a fact, it's a conclusion.  We

24   don't know what was proper or not because we don't know what

25   was submitted, what artwork or samples.  When was approval

1    sought?  What are these payments that Mrs. Fields allegedly

2    attempted to extract?  Under *Iqbal* and *Twombly,* Your Honor

3    we have to say something, not just a conclusion.

4         The third sentence that they provide in that same

5    paragraph says that Mrs. Fields was improperly acting by

6    initially granting approval for certain Artwork/Samples for

7    licensed products submitted by Bektrom only to later

8    withdraw approval after Bektrom had expended resources

9    developing and manufacturing the licensing -- licensed

10   products.

11        Now stopping there to look at that particular

12   allegation, withdrawing approval is a conclusion, not a

13   fact.  What facts show that Mrs. Fields withdrew anything?

14   When did they do it?  What did they withdraw?  What was even

15   submitted to them in the first place that they would

16   withdraw approval of.  If there are certain artwork or

17   samples, which is what this allegation states, why aren't

18   they identified?  There is nothing certain at all here, Your

19   Honor.

20        And then the fourth one I suppose is almost close to a

21   catch-all and that is that Mrs. Fields quote, refused

22   entirely to review or approve Artwork/Samples for spice

23   shakers submitted by Bektrom.  Again this is a conclusion.

24   How do we know that Mrs. Fields actually refused anything?

25   We simply don't know.  What did it do that constituted

1    refusal?  Why is that a refusal as opposed to simply

2    forgetting about it or losing the samples?  Why was it an

3    accident as opposed to some intentional act?  We have no

4    idea, Your Honor.  So under prong one, we don't have facts.

5         Bektrom could be alleging any type of failure to

6    approve any item, it could be a label on the packaging.  We

7    don't know what the failure to approve was.  Mrs. Fields did

8    business with Bektrom for two years, but Bektrom gives us no

9    actual facts about why it did something wrong.  Even

10   regarding Mrs. Fields' use of discretion, which it is

11   entitled to under the contract, Bektrom admits that it

12   doesn't know what those facts are, and this is a quote from

13   its opposition memorandum, Your Honor.  Only discovery in

14   this case will reveal whether Mrs. Fields had any reason at

15   all for refusing to review and/or disapprove Bektrom's

16   submissions.  That, Your Honor, is not a pled fact, that is

17   a fishing expedition and it is insufficient under *Twombly*

18   and *Iqbal*.

19        Ultimately under *Iqbal* claims need not be unrealistic

20   to be rejected as mere conclusions.  The court there held,

21   to be clear, we do not reject these bald allegations on the

22   ground that they're unrealistic or nonsensical.  It is the

23   conclusory nature of respondent's allegations rather than

24   their extravagantly fanciful nature that this entitles them

25   to the presumption of truth.  Because they're conclusions

1      not facts, they can't continue.

2           I recommend, Your Honor, when you speak with Bektrom's

3      counsel, when he appears before you next, that you ask him

4      what are the facts?  Please tell us what facts support this

5      counterclaim for breach of the covenant of good faith and

6      fair dealing.

7           Then finally on prong two for plausibility as to that

8      claim, Your Honor, why would Mrs. Fields ignore artwork or

9      samples that would generate royalties for it in the first

10     place?  If the allegation is that Mrs. Fields didn't approve

11     samples that Bektrom could have used to sell and generate

12     royalties which they would have paid to Mrs. Fields, why

13     would Mrs. Fields even do that?  Why would Mrs. Fields avoid

14     getting the money that it could if it provided this

15     allegedly withheld approval.

16          Secondly, why did Bektrom complain about this only

17     after the license agreement was terminated?  We have no

18     record of any complaint that Mrs. Fields failed to do

19     anything including review Artwork/Samples until after they

20     were told that the agreement was done and that they owed the

21     guaranteed royalties.

22          Now, in opposition Bektrom expounds on a lot of

23     ancillary issues.  They have an elegant opposition

24     memorandum, Your Honor, but it doesn't address the actual

25     issues in the case which is whether or not that counterclaim

1    meets *Iqbal* and *Twombly* by pleading facts.  The only thing

2    that truly responds from Bektrom's perspective is the

3    general statement that deciding waiver defense and the

4    covenant of good faith and fair dealing involves questions

5    of fact and therefore should not be decided at this stage.

6         Well, Your Honor, if we were here on summary judgment

7    that might be correct, but we're not.  We're here on a

8    motion for judgment on pleadings to decide whether or not

9    Bektrom has sufficiently pleaded its answer defense and its

10   good faith counterclaim.

11        In addition, the court in *Iqbal* held our decision in

12   *Twombly* expounded the pleading standard for all civil

13   actions.  So in that essence, Your Honor, I would like to be

14   answering my own initial question.  Yes, even waiver and the

15   covenant of good faith and fair dealing are subject to

16   *Twombly* and *Iqbal.*  All actions where claims or defenses are

17   pled must have facts, not just conclusions.  The policy is

18   clear if the motion for judgment on pleadings is not granted

19   in this regard, what we're going to do, Your Honor, is we're

20   going to have a lot of discovery, get a lot of people

21   involved and pay a lot of money for a claim that has nothing

22   to underlie it other than conclusions.  As the court held in

23   *Twombly,* that if it dismisses such claims, quote, left a

24   party with a largely groundless claim be allowed to take up

25   the time of a number of other people with the right to do so

1       representing an in terrorem increment of the settlement

2       value which I interpret as the case moves on through

3       discovery just to try and get some kind of settlement, Your

4       Honor, without anything to really support the claim that is

5       involved.

6              In conclusion, Your Honor, alleging a normally factual

7       counterclaim or defense, like the covenant of good faith and

8       fair dealing and waiver are, do not evade the requirements

9       of *Twombly* and *Iqbal.*  After *Twombly,* parties are simply not

10      allowed a free ticket to expensive discovery by pleading

11      conclusions, not facts.  Thank you, Your Honor.

12             THE COURT:  Counselor?

13             MR. BENNION:  Thank you, Your Honor.  Your Honor, this

14      motion --

15             THE COURT:  Absent the counterclaim, and absent the

16      claim on good faith and fair dealing, if they weren't here

17      at all do you owe them $750,000.00?

18             MR. BENNION:  Did you ask if we do?  The answer is no.

19             THE COURT:  And tell me why?

20             MR. BENNION:  Because --

21             THE COURT:  Skip the counterclaim, skip the offsets.

22      Under the contract do you owe them a minimum amount

23      periodically paid?

24             MR. BENNION:  The contract calls for a minimum

25      guarantee royalty payment that is periodically paid once a

1    year.  It starts at 100,000 and then escalates up to 250,000

2    by the fifth year.

3         THE COURT:  They say you owe them 750?

4         MR. BENNION:  We don't.

5         THE COURT:  And is the reason that you owe them your

6    counterclaim?

7         MR. BENNION:  Is the reason that we -- the reason that

8    we don't owe them?  The reason we don't owe them is the

9    counterclaim but also the defenses and the denials in our

10   answer.  There is more defenses than just waiver and the

11   implied covenant.

12        THE COURT:  Well, I understand that.  If you just look

13   at the contract, the terms of the contract, skip the other

14   stuff for a moment, you may have an appropriate

15   counterclaim, you may have an appropriate offset.

16        MR. BENNION:  I'm with you.

17        THE COURT:  Looking at just the words of the contract,

18   did you pay them $750,000.00?

19        MR. BENNION:  We did not.

20        THE COURT:  Okay.  Under the terms of the contract,

21   did you owe them $750,000.00 -- -

22        MR. BENNION:  If you exclude --

23        THE COURT:  -- everything else.

24        MR. BENNION:  -- everything else, then yes, the

25   contract provided for those payments.

1          THE COURT:  You folks acknowledge that there was a

2     minimum payment to be paid periodically.  The minimum wasn't

3     paid.  If you added up the minimum payments, there is

4     $750,000.00?

5          MR. BENNION:  I haven't checked the exact math but I

6     assume --

7          THE COURT:  I haven't either and he didn't have the

8     exact amount but --

9          MR. BENNION:  But, yes.  The contract provides for

10    minimum payments over the five years.  We made the first

11    minimum payment in year one, and then we paid some

12    royalties.

13          THE COURT:  After that.

14          MR. BENNION:  But thereafter, there were no minimum

15    payments made.  And so that is correct, Your Honor.

16          THE COURT:  Okay.

17          MR. BENNION:  But that is not obviously the answer to

18    this case.

19          THE COURT:  Okay.  Now, well I understand that, but it

20    may be the answer to half of it.

21          MR. BENNION:  Not really, but we can get into that.

22          THE COURT:  Is there any question that 750 is the

23    minimum?

24          MR. BENNION:  Again, I haven't put pencil to paper to

25    add the exact dollars of how much was paid.

1          THE COURT:  Well, let's ask counsel, what are your

2     dollars?

3          MR. ANDREASON:  I'll grab that, Your Honor.

4          MR. BENNION:  The --

5          MR. ANDREASON:  $754,488.00.

6     Seven-five-four-four-eight-eight.

7          THE COURT:  Now, that just includes the minimum, no

8     interest, no nothing.

9          MR. ANDREASON:  That is correct, Your Honor.

10          MR. BENNION:  And my understanding is that is the

11     minimum if you add the four years of the minimum payments

12     together and then subtract the royalty payments.  Because

13     the royalty payments are an offset to the minimum.

14          THE COURT:  Yeah, is that correct.

15          MR. ANDREASON:  Yes, Your Honor.

16          THE COURT:  Okay.

17          MR. ANDREASON:  It is the guaranteed minimum.

18          THE COURT:  How much did the --

19          MR. ANDREASON:  Pardon me?

20          THE COURT:  Do you know what the royalty payments

21     were.

22          MR. ANDREASON:  I do not, Your Honor.

23          MR. BENNION:  It is -- it is in the complaint.  It is

24     like $65,000.00.  It is --

25          THE COURT:  Okay.  Well, tell me now why you shouldn't

1    pay it?

2         MR. BENNION:  Okay, thank you.  Here is the problem,

3    judge.  The contract that required the payments, it is based

4    on a concept which is Mrs. Field's is going to allow Bektrom

5    to use the Mrs. Fields marks on its products.  And the whole

6    idea is that is going to make your products marketable

7    because we have a name that is recognized out there in the

8    public.

9         And the contract provides that Bektrom cannot actually

10   market any of the products with Mrs. Fields' names on them

11   unless they are approved, the artwork on the boxes or

12   whatever is approved and the samples of what is in the boxes

13   is approved by Mrs. Fields.

14        THE COURT:  Okay.

15        MR. BENNION:  And so inherently that means that

16   Mrs. Fields is going to review the artwork because if they

17   don't, they're impeding Bektrom's ability to even sell any

18   products.

19        THE COURT:  Yeah.  Well, apparently they sold enough

20   to pay a royalty of 65.

21        MR. BENNION:  Just barely -- barely at the beginning

22   they sold a little bit, but there is -- but the concept of

23   the contract was not just for like cake mixes or those kinds

24   of things, there is these spice shakers.  One of the

25   allegations, and counsel just read it, was that they never

1      approved they didn't even review a single --

2            THE COURT:  Yeah.

3            MR. BENNION:  -- submission.

4            THE COURT:  Tell me what you submitted?

5            MR. BENNION:  Pardon me?

6            THE COURT:  Tell me what you submitted?

7            MR. BENNION:  My understanding of what was submitted

8      was drawings or mockups of the product boxes with artwork.

9            THE COURT:  Do we know when and where?

10           MR. BENNION:  I don't have the details of that at this

11     stage in the case, no.

12           THE COURT:  Okay.

13           MR. BENNION:  But what the client has told me is we

14     submitted artwork and they wouldn't even respond.  They

15     didn't say no, they just didn't even answer.

16           THE COURT:  Well, yeah.  You get into problems in

17     reference to identifying what it is that was submitted and

18     when.

19           MR. BENNION:  Well, if that, Your Honor -- our

20     obligation, my understanding under the rules, is we're to

21     supply a short plain statement of the facts.  This isn't a

22     fraud case where we are going to plead in particularity so

23     and so submitted this artwork on this day and here is a copy

24     of it.

25           THE COURT:  Well, not putting you in a position to say

1    I submitted some artwork.  If somebody in fact submitted a

2    product or even a progenitor of a product.

3         MR. BENNION:  Right.

4         THE COURT:  They did it at some point in time and they

5    gave it to somebody and they asked for a response of some

6    kind.

7         MR. BENNION:  Yes.

8         THE COURT:  And it is that kind of reasonably factual

9    footing that ordinarily you would layout so that people

10   could understand well did I or did I not get baking soda on

11   such and such a date or a cookie recipe on such and such a

12   date.

13        MR. BENNION:  Your Honor, if you're inclined to

14   require that in the pleading stage, then I would request

15   that we have leave to amend our answer and counterclaim and

16   add those kinds of details in.  My take of the rules

17   wouldn't require that, but if Your Honor wants it then we

18   will do it that way.

19        THE COURT:  Well, I think that way we can deal with

20   specifics.  If you have got no real contest as to the

21   minimum, you know, we could make a provisional order and

22   stay the execution in reference to what the contract says,

23   that doesn't deal with your defenses at all, or doesn't deal

24   with your counterclaims at all.  But what it does is say

25   under the contract 754, but you may not have earned it.  If

1    754 isn't in contest as far as the contract goes, well, you

2    say I have an excuse, we don't owe that, we don't owe that

3    because we submitted product, they didn't respond, I can

4    understand that.  But what that does is narrow down the area

5    that we can deal with.

6         MR. BENNION:  Your Honor, I think that rather than a

7    provisional order at this stage I would simply ask for

8    time to re-answer and re-file the counterclaim.  Because if

9    you read the -- if you read the counterclaim that we filed,

10   Your Honor, and specifically Paragraph 10 that counsel just

11   read through, and then imagine this, they had admitted these

12   facts.  It says, over the course of the parties dealings,

13   Mrs. Fields regularly misused discretion under Section 21.2

14   in the following non-exhaustive ways.  One, failing to

15   review let alone approve Artwork/Samples.  What if they had

16   just simply admitted that they did that?

17        THE COURT:  That would be helpful.

18        MR. BENNION:  I agree.  But at this stage on a motion

19   under 12(c) the court needs to assume that they admitted

20   that.  The court takes that allegation as true.

21        THE COURT:  Yeah.  I am just trying to truncate things

22   so that we can focus on what is important if you have got a

23   genuine offset or a genuine counterclaim, but let you chip

24   away or extinguish what the contract says.

25        MR. BENNION:  Here is another inference that we're

1     entitled to, Your Honor, under Rule 12(c).  And as you know,

2     we're entitled to these facts as pled in both our answer and

3     our counterclaim to be taken as true.  And one of the -- one

4     of the allegations that counsel was just talking about is

5     that a payment wasn't made after the first year.  And so

6     that is September 30th of 2013 the second payment was due.

7          They went through the whole year, more than a year,

8     before they filed their complaint.  That connotes, or that

9     implies, that they didn't think they had that payment

10    coming.  If they thought that a payment was due on September

11    30, 2013, and no payment was forthcoming, why would they

12    wait for over a year to bring this lawsuit?  And that is an

13    inference --

14         THE COURT:  They're just lazy.

15         MR. BENNION:  Well, maybe they're lazy, but a better

16    inference is that they waived the right to make that claim.

17    And we're entitled to the inferences to go our way at this

18    stage.

19         THE COURT:  Well, is that your theory of waiver, that

20    they waited too long?

21         MR. BENNION:  No, we pled specifically that the

22    parties agreed and we can put on our witness who will say we

23    had an agreement.  They specifically agreed that in lieu of

24    the guaranteed payments the only payments that needed to be

25    made were on actual royalties on actual sales.

1          THE COURT:  Was there a conversation with somebody?

2          MR. BENNION:  Yes.

3          THE COURT:  And do you know who they are?

4          MR. BENNION:  Standing here today I don't know.  I

5     believe that the man on my side was named Ernie Barbella.

6          THE COURT:  And he claims that he had a conversation

7     with somebody?

8          MR. BENNION:  Yes.

9          THE COURT:  Uh-huh (affirmative).

10         MR. BENNION:  And counsel asked why would -- why would

11    Mrs. Fields do that?  Well, there is a myriad of reasons why

12    they would do it.  For example, if they think hey, if we

13    don't do this, this company is never going to make us one

14    dime and we would rather get something than nothing.  So

15    there is all kinds of reasons.

16         THE COURT:  Yeah.  Well --

17         MR. BENNION:  But then the motivation of Mrs. Fields

18    to deny the artwork approvals or to even just fail to review

19    it at all, those motivations are irrelevant to the case,

20    Your Honor.  It is not an element of our burden to prove

21    breach of the implied covenant.

22         THE COURT:  Well, can you define for me, just talking

23    back and forth here, how the implied covenant was violated?

24         MR. BENNION:  Yes.  The implied covenant, when you

25    have a provision that says all artwork has to be approved,

1    there is an implication that it is going to be at least

2    reviewed and then it is going to be approved or disapproved

3    on some reasonable basis.  And especially when there is a

4    covenant or a provision in the contract that says you can't

5    sell anything with our mark on it unless we approved first.

6         THE COURT:  Sure.

7         MR. BENNION:  And so there is an implication that

8    they're going to look at it and approve it or disapprove it

9    on some basis.  But when the artwork is submitted and they

10   don't even look at it, and the other the other part of that

11   provision says if we don't respond within 10 days that is

12   the same as us saying no.  And so for all we know, we mailed

13   them artwork and they never even opened it.

14        THE COURT:  Well --

15        MR. BENNION:  And so because we don't hear back from

16   them within 10 days, we can't sell anything.  And the whole

17   side of idea of this contract is we're going to sell things

18   and then split the money.  And so there is absolutely an

19   implied covenant that they're going to not impede our

20   ability to receive the benefit.

21        THE COURT:  Well, they're going to look and you're

22   going to end up with a common product.  I can understand

23   that.

24        MR. BENNION:  Sure.

25        THE COURT:  Okay.

1       MR. BENNION:  And so if they don't do that, we cannot

2    sell.  If we cannot sell, we have no money to pay a royalty

3    with.  And then they just sit back and say yeah but pay us

4    the $250,000.00 of royalty for this year on the minimum

5    guarantee or pay us the 150.  And here is an advantage to

6    them.  He asked why would they do that?  Here is something.

7    Mrs. Fields has a mark.  It is exclusive.  And the more

8    exclusive it is, the better it is for them.

9        In other words, if everybody can sell their products

10   with Mrs. Fields' marks on it, then Mrs. Fields' mark

11   becomes worthless and it becomes so diluted that it just

12   means nothing in the marketplace.  And so the more they can

13   keep their mark from being used, the better it is for them.

14   And especially when they have a deal like this where it is

15   sort of heads I win, tails you lose, because if I don't

16   approve your artwork you can't sell anything but you still

17   owe me in total something this whole contract if you added

18   all of the minimum payments together it was like

19   $950,000.00.  We paid 165 approximately of that.  So they

20   make a million dollars for signing a contract that they're

21   not even going to let us succeed on.  That is an illusory

22   contract.  That is one of our affirmative defenses as well.

23       THE COURT:  Well, obviously, they need to do their

24   part.  Okay.  Well, let me ask counsel for plaintiff were

25   any products submitted?

1          MR. ANDREASON:  Pardon me?  Say it again, Your Honor?

2          THE COURT:  I say were any products submitted?

3          MR. ANDREASON:  Your Honor, we have no information as

4     to any products that were submitted and/or improperly

5     refused.  But this is the burden of Bektrom.

6          THE COURT:  I understand burdens, but I'm just talking

7     back and forth here.

8          MR. ANDREASON:  Yeah, we're not aware of any --

9          THE COURT:  You either got some products or you

10    didn't.  You either looked at them or you didn't.  You

11    either approved them or you didn't.

12         MR. ANDREASON:  We did look at and approve quite a

13    bit, Your Honor.  They're claiming that we didn't do some

14    and we don't know what they're talking about unfortunately.

15    I would like to take strong issue with two things that

16    counsel just said which were incorrect.  One he said that

17    Rule 8 pleadings standards are not as low as Rule 9 fraud

18    pleading standards and therefore we don't need to go beyond

19    simply stating the conclusions that he has provided.  But in

20    *Iqbal* in 2009, the Supreme Court addressed that head on,

21    that particular argument, that very argument.  This is on

22    Page 686 to 687.  In response to counsel's argument it said,

23    quote, it is true that Rule 9(b) requires particularity when

24    pleading fraud or mistake.  While allowing malice, intent,

25    knowledge and other conditions of a person's mind to be

1     alleged generally, but generally is a relative term.  It

2     does not give a plaintiff license to evade the less rigid

3     although still operative strictures of Rule 8.  And then

4     here is the key part, Your Honor.  Rule 8 does not empower

5     respondent to plead the bear elements of his cause of

6     action, affix the label general allegation and expect his

7     complaint to survive a motion to dismiss.  In other words,

8     Rule 8 is not enough if -- excuse me, an allegation is not

9     enough to meet Rule 8 as interpreted by the court in *Twombly*

10    and *Iqbal.*

11         In fact, I read earlier but this is a second point I

12    have to strongly disagree with.  Counsel says that the court

13    needs to assume that these allegations in Paragraph 10 of

14    the counterclaim are true.  That is false.  The court does

15    not assume is true bear conclusions.  We read this before

16    from *Iqbal.*  The court said, the tenet that a court must

17    accept as true all of the allegations contained in the

18    complaint is inapplicable to legal conclusions.  So the

19    court doesn't have to accept those conclusions.

20         Feel free to look all up and down Paragraph 10 which

21    is the -- feel free to look at the whole counterclaim.

22    There is no place besides Paragraph 10 that actually states

23    what they're claiming we did wrong.  And in all Paragraph 10

24    it is all about conclusions.  That is all there are.  For a

25    motion to dismiss or motion for judgment on the pleadings,

1    which has the same standard, that requires dismissal.

2         Now, this is the last point.  Counsel quite tellingly

3    said that the facts that you asked him for what actually

4    happened, what was submitted, who, what, when, where, what

5    facts.  The only thing that I heard in all of what counsel

6    said that may be a specific fact is that he thinks that a

7    person who I have never heard of before, Ernie Barbello, it

8    may not even be spelled right, may have had a conversation

9    that may have been what led to this supposed agreement.

10        Your Honor, it is nice to get that here in oral

11   argument, but we don't even have that in the counterclaim.

12   We don't have anything.  It is all conclusory allegations.

13   The earlier statement he made I think was more accurate in

14   which he said I don't know these facts, my client may know

15   them.

16        MR. BENNION:  Your Honor, may I respond?

17        THE COURT:  Oh, sure.

18        MR. BENNION:  To characterize Paragraph 10 as legal

19   conclusions is just -- it is error.  A legal conclusion is

20   -- would be something such as this was a breach of contract.

21   What this Paragraph 10 supplies specifics of the kinds of

22   things that happened.  It says they failed -- that

23   Mrs. Fields failed to review art samples for licensed

24   products submitted by Bektrom.  That is not a legal

25   conclusion, that is a factual allegation.  If they admitted

1    that factual allegation, which in this context you basically

2    have assumed that they did, then we wouldn't even be talking

3    about a motion to dismiss on the -- a motion for judgment on

4    the pleadings.  And so the distinction that counsel just

5    drew between Rule 8 and Rule 9 does not apply.  We didn't

6    just throw out legal conclusions and elements of claims.  We

7    talk here about specific things that were done.  Now, could

8    more details be supplied?  Yes.  But that doesn't mean we

9    didn't meet the requirement?

10         THE COURT:  I frankly am interested in what was

11   submitted, when it was submitted.  Your Paragraph 10 may

12   well be sufficient if it had something preceding it in the

13   way of this product, this product, this product and this

14   product were submitted.  The response there you didn't look

15   at them, I understand that.  But I have got to have, it

16   seems to me, in order to deal with the so-called motion for

17   judgment on the pleadings by way of information, by way of

18   counterclaim, something more than you have got there now.

19         MR. BENNION:  Well, then what I would request, Your

20   Honor, is give us two weeks and we'll file an amended answer

21   and counterclaim and then they can renew their motion if

22   they think there is still a motion.

23         THE COURT:  Okay.  Well, I think that probably makes

24   sense.  And what I will do is I will treat the motion for

25   judgment on the pleadings as a motion to dismiss the answer

1    and counterclaim.  We'll grant that.  We'll give you 20 days

2    to file an amended answer and counterclaim.  Flesh it out.

3         I'll at this point in time deny the motion for

4    judgment on the pleadings.  Let's see what you come up with.

5    Anticipating that you're going to do that within 20 days, as

6    long as you're both here I'll save you a trip.  How soon can

7    plaintiff get his work done assuming that we're going to

8    have to have some information gathering in reference to the

9    answer and counterclaim as amended?

10        MR. ANDREASON:  So with 20 days, Your Honor, for them

11   to refile their answer and counterclaim, how much further

12   time do we need to determine whether or not --

13        THE COURT:  I didn't quite hear.

14        MR. ANDREASON:  So after they file their answer and

15   counterclaim, Your Honor, how much additional time do we

16   need as plaintiff to do what?

17        THE COURT:  For discovery purposes.

18        MR. ANDREASON:  For discovery purposes, Your Honor?

19   Boy, it is hard to say without knowing what they're going to

20   plead, Your Honor.

21        THE COURT:  Okay.  Well, let's let them plead and

22   we'll deal with that down the road.  I was going to save you

23   a trip but that is all right, it makes no difference to me.

24        MR. ANDREASON:  We like being here, Your Honor, and

25   one --

1          THE COURT:  That is fine.

2          MR. ANDREASON:  One additional thought, Your Honor,

3    you may want to ask counsel for Bektrom to supply you with a

4    redline from its prior counterclaim showing the changes made

5    so that you can identify what the specifics are.

6          THE COURT:  I can identify it.  I am happy if he just

7    does his work.

8          MR. ANDREASON:  Thank you, Your Honor.

9          THE COURT:  Thanks a lot.

10          MR. BENNION:  We'll do it, Your Honor.

11          THE COURT:  Thank you.  Why don't you send me a little

12    order treating your motion as a motion to dismiss and the

13    deadlines that we fixed.

14          MR. BENNION:  So the motion to dismiss is granted

15    without prejudice.

16          THE COURT:  I'm sorry?

17          MR. BENNION:  Just so I understand what this --

18          THE COURT:  Well, with leave to amend.

19          MR. BENNION:  Yeah, but the motion to -- for judgment

20    on the pleadings is denied, but a motion to dismiss under

21    12(b)(6) is granted without prejudice subject to our filing

22    an amended --

23          THE COURT:  Well, it is granted with leave to amend.

24          MR. BENNION:  Okay.

25          THE COURT:  And we'll be in recess until tomorrow.

1          MR. ANDREASON:  Thank you, Your Honor.

2          MR. BENNION:  Thank you, Your Honor.

3          THE COURT:  At 9:30 a.m.

4          (Whereupon, the hearing concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    STATE OF UTAH              )

 2                               )ss

 3    COUNTY OF SALT LAKE        )

 4

 5             I, Laura W. Robinson, Certified Shorthand

 6    Reporter, Registered Professional Reporter and Notary Public

 7    within and for the County of Salt Lake, State of Utah, do

 8    hereby certify:

 9             That the foregoing proceedings were taken before

10    me at the time and place set forth herein and were taken

11    down by me in shorthand and thereafter transcribed into

12    typewriting under my direction and supervision;

13             That the foregoing pages contain a true and

14    correct transcription of my said shorthand notes so taken.

15             In witness whereof I have subscribed my name and

16    affixed my seal this 30th day of May, 2015.

17

18                              _____

19                              Laura W. Robinson

20                              RPR, FCRR, CSR, CP

21

22

23

24

25
```