David M. Bennion, USB #5664
Zack L. Winzeler, USB #12280
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
DBennion@parsonsbehle.com
ZWinzeler@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant Bektrom Foods, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company,<br><br>     Plaintiff,<br><br>vs.<br><br>BEKTROM FOODS, INC., a North Dakota corporation,<br><br>     Defendant. | **AMENDED ANSWER TO COMPLAINT AND AMENDED COUNTERCLAIM**<br><br>Case No. 2:14-CV-00776<br><br>The Honorable Bruce S. Jenkins |

Defendant Bektrom Foods, Inc. ("Bektrom"), by and through its undersigned counsel, hereby responds to the Complaint (the "Complaint") of plaintiff Mrs. Fields Franchising, LLC ("Mrs. Fields") as follows:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Bektrom responds to the allegations of the Complaint as follows:

INTRODUCTION

1.       Responding to the allegations of paragraph 1 of the Complaint, Bektrom admits

that Mrs. Fields asserts in its Complaint a claim for breach of the Merchandising License

Agreement (the "License Agreement") entered into by the parties on May 1, 2011.  Bektrom

asserts that the Licensing Agreement speaks for itself, and denies the remaining allegations and

characterizations set forth in paragraph 1.

PARTIES

2.       Bektrom denies the allegations of paragraph 2 of the Complaint for lack of

knowledge or information sufficient to form a belief as to the truth or falsity thereof.

3.       Bektrom admits the allegations of paragraph 3 of the Complaint.

JURISDICTION AND VENUE

4.       Bektrom admits the allegations of paragraph 4 of the Complaint.

5.       Responding to the allegations of paragraph 5 of the Complaint, Bektrom admits

that it consented to personal jurisdiction in this jurisdiction under Section 41 of the License

Agreement.  Bektrom denies the remaining allegations set forth in paragraph 5.

6.       Responding to the allegations of paragraph 6 of the Complaint, Bektrom admits

that venue in this forum is proper under Section 41 of the License Agreement.  Bektrom denies

the remaining allegations set forth in paragraph 6.

FACTUAL ALLEGATIONS

7.       Bektrom denies the allegations of paragraph 7 of the Complaint for lack of

knowledge or information sufficient to form a belief as to the truth or falsity thereof.

8.      Responding to the allegations of paragraph 8 of the Complaint, Bektrom admits that it entered into the License Agreement with Mrs. Fields on or about June 28, 2011.  Bektrom asserts that the License Agreement speaks for itself, and denies any characterizations in paragraph 8 that are inconsistent with the express terms of the License Agreement.

9-11.   Responding to the allegations of paragraphs 9 through 11 of the Complaint, Bektrom asserts that the License Agreement speaks for itself, and denies any characterizations in paragraphs 9 through 11 that are inconsistent with the express terms of the License Agreement.

12.     Bektrom denies the allegations of paragraph 12 of the Complaint for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

13.     Bektrom admits the allegations of paragraph 13 of the Complaint.

14.     Bektrom denies the allegations of paragraph 14 of the Complaint and specifically asserts that Mrs. Fields waived its right to the installment payment referenced in paragraph 14 (*see* Bektrom's Ninth Affirmative Defense) and, in addition, Bektrom's performance under the License Agreement was excused by Mrs. Fields' breaches of the express terms of the License Agreement and its breaches of the implied covenant of good faith and fair dealing inherent in the License Agreement, as detailed in the Counterclaim.

15.     Responding to the allegations of paragraph 15 of the Complaint, Bektrom admits that it paid the amount referenced in paragraph 15, but denies that it failed to provide the Royalty Reports to Mrs. Fields.

16.     Bektrom denies the allegations of paragraph 16 of the Complaint and specifically asserts that by August 27, 2014, Mrs. Fields had already waived its right to pursue Bektrom for alleged payment defaults (*see* Bektrom's Ninth Affirmative Defense) and, in addition, Bektrom's

performance under the License Agreement was excused by Mrs. Fields' breaches of the express terms of the License Agreement and its breaches of the implied covenant of good faith and fair dealing inherent in the License Agreement, as detailed in the Counterclaim.

17.     Bektrom denies the allegations of paragraph 17 of the Complaint and specifically asserts that by September 30, 2014, Mrs. Fields had already waived its right to pursue Bektrom for alleged payment defaults (*see* Bektrom's Ninth Affirmative Defense) and, in addition, Bektrom's performance under the License Agreement was excused by Mrs. Fields' breaches of the express terms of the License Agreement and its breaches of the implied covenant of good faith and fair dealing inherent in the License Agreement, as detailed in the Counterclaim.

18.     Responding to the allegations of paragraph 18 of the Complaint, Bektrom admits that Mrs. Fields purported to terminate the License Agreement on October 23, 2014, but denies that Mrs. Fields had the grounds to terminate referenced in paragraph 18.

19.     Responding to the allegations of paragraph 19 of the Complaint, Bektrom asserts that the License Agreement speaks for itself, and denies any characterizations in paragraph 19 that are inconsistent with the express terms of the License Agreement.

20.     Bektrom denies the allegations of paragraph 20 of the Complaint.

<u>COUNT I</u>
(Breach of Contract)

21.     Bektrom incorporates by reference its responses to paragraphs 1 through 20, above.

22.     Bektrom admits that Bektrom and Mrs. Fields are parties to the License Agreement.   The remainder of the allegations in paragraph 22 of the Complaint are legal

conclusions for which no factual response is required.  To the extent a factual response is required, Bektrom denies the remaining allegations of paragraph 22 of the Complaint.

23-24.  Bektrom denies the allegations of paragraphs 23 and 24 of the Complaint.

25.    Bektrom denies each and every allegation of the Amended Complaint not specifically admitted above.

<u>**THIRD AFFIRMATIVE DEFENSE**</u>

The Complaint is barred by the doctrines of waiver, estoppel, ratification, laches and/or acquiescence.

<u>**FOURTH AFFIRMATIVE DEFENSE**</u>

The Complaint is barred by the doctrines of accord and satisfaction, payment, offset, and/or release.

<u>**FIFTH AFFIRMATIVE DEFENSE**</u>

The Complaint is barred by failure of consideration.

<u>**SIXTH AFFIRMATIVE DEFENSE**</u>

The Complaint is barred because Mrs. Fields failed to mitigate its damages, if any.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

The Complaint is barred by the first breach rule.

<u>**EIGHTH AFFIRMATIVE DEFENSE**</u>

Mrs. Fields' claims are barred by its failure to perform a condition precedent, including but not limited to its duty of good faith and fair dealing, thereby excusing performance by Bektrom.

5

## NINTH AFFIRMATIVE DEFENSE

Mrs. Fields waived any claim to minimum "Guarantees" under the License Agreement because it agreed after the execution of the License Agreement to accept royalty payments based on actual sales (which Bektrom has already paid) in lieu of the minimum "Guarantees." Specifically, in April 2014, Bektrom, through its representatives, Ernie Barbella and Aldon Reed, entered into discussions regarding the License Agreement with Mrs. Fields' Vice President, Dustin Finkel.  Mrs. Fields made a written offer to Bektrom under which Mrs. Fields would agree to source a new supplier for the Licensed Products under the License Agreement and waive the minimum guarantees in exchange for Bektrom making certain unearned royalty payments.  Bektrom responded in writing that it would not be able to make the specific payments proposed by Mrs. Fields, and presented a counteroffer to Mrs. Fields' offer, which Mrs. Fields, through Mr. Finkel, accepted in writing.

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred by Mrs. Fields' fraudulent inducement of the License Agreement, including, but not limited to, Mrs. Fields' misrepresentations before Bektrom signed the License Agreement that Debbie Fields was returning to Mrs. Fields and would be promoting the Mrs. Fields' brand in an effort to revive the declining value of the Mrs. Fields' Marks.

## ELEVENTH AFFIRMATIVE DEFENSE

The License Agreement, as interpreted and attempted to be applied by Mrs. Fields, is illusory and unenforceable.

## TWELFTH AFFIRMATIVE DEFENSE

Bektrom expressly reserves the right to assert additional defenses, by way of affirmative defenses, counterclaims, and/or third-party claims, as additional facts are disclosed in the course of discovery.

## PRAYER FOR RELIEF

WHEREFORE, Bektrom prays as follows:

1.      That the Complaint against Bektrom be dismissed with prejudice and Mrs. Fields take nothing therefrom;

2.      For an award of its reasonable attorney's fees and costs incurred in defending against the Complaint pursuant to Utah Code Ann. § 78B-5-825; and

3.      For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

Bektrom, by and through undersigned counsel, hereby counterclaims and alleges against Mrs. Fields as follows:

## PARTIES

1.      Counterclaimant Bektrom is a North Dakota corporation with its principal place of business in Monroe Michigan.

2.      On information and belief, counterclaim defendant Mrs. Fields is a Delaware limited liability company with its principal place of business in Broomfield, Colorado.

7

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over the above-captioned action pursuant to 28 U.S.C. § 1332 because Bektrom and Mrs. Fields are citizens of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in this forum pursuant to Section 41 of the License Agreement.

5.      Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, this Court has jurisdiction over this Counterclaim as it arises out of the same transactions or occurrences that are the subject matter of Mrs. Fields' Complaint and it does not require adding another party over whom the court cannot acquire jurisdiction.

## GENERAL ALLEGATIONS

6.      Bektrom and Mrs. Fields executed and entered into the License Agreement on or about June 28, 2011.

7.      Under the License Agreement, Bektrom licensed from Mrs. Fields the exclusive right to use, among other things, Ms. Fields' logos, brands, names, common law and registered trademarks, service marks, copyrights, and other rights of endorsement, association, and sponsorship (the "Mrs. Fields' Marks"), (License Agreement, § 3), on the following merchandise:

> (i) spice shakers (e.g. cinnamon sugar, sprinkles, ice cream toppings), (ii) spice grinders (e.g. cinnamon essence, candy cane), (iii) dry baking mixes (e.g. cupcakes, cookies, cake mixes), pancake mixes (e.g. chocolate chip, blueberry, maple syrup), biscuit mix, brownies and other baking mixes . . . .

(License Agreement, § 4.)   The foregoing merchandise shall hereinafter be referred to as the "Licensed Products."   Bektrom paid an advance of $75,000 to Mrs. Fields for the right to sell the foregoing Licensed Products.

8.     Under Section 21.2 of the License Agreement, Mrs. Fields retains the "sole discretion" to approve or disapprove Bektrom's Artwork/Samples for the Licensed Products. (License Agreement, § 21.2.)  Under the same section, Bektrom is not allowed to "manufacture, use, offer for sale, sell, advertise, ship or distribute any Licensed Products" without Mrs. Fields' prior written approval of the Artwork/Samples.  (*Id.*)

9.     Also under Section 21.2, any Artwork/Samples submitted to Mrs. Fields that are not approved in ten days after receipt of the same by Mrs. Fields are deemed to have been disapproved.  (*Id.*)

10.    As detailed below, over the course of the parties' dealings, Mrs. Fields regularly misused its discretion under Section 21.2 in the following non-exhaustive ways: (1) failing to review, let alone approve, Artwork/Samples for Licensed Products submitted by Bektrom, or otherwise failing or refusing entirely to respond to Bektrom's requests for review and approval of Artwork/Samples for Licensed Products; (2) improperly withholding approval for Artwork/Samples for Licensed Products submitted by Bektrom in an attempt to extract payments from Bektrom; (3) initially granting approval for certain Artwork/Samples for Licensed Products submitted by Bektrom only to later withdraw approval after Bektrom had expended resources developing and manufacturing the Licensed Products; and (4) refusing entirely to review or approve Artwork/Samples for spice shakers and spice grinders submitted by Bektrom.

11.    In 2012, Bektrom submitted Artwork/Samples for spice shakers and spice grinders to Mrs. Fields.   Mrs. Fields' representative, Dustin Finkel, told Bektrom's representative, Aldon Reed, on at least two occasions in 2012 that Mrs. Fields was not sure that the spice shakers and spice grinders were a good fit for Mrs. Fields' brand, and that Mrs. Fields

would wait to see how Bektrom performed on the sale of the dry baking mixes before approving any Artwork/Samples for spice shakers and spice grinders.  Mrs. Fields took this position in spite of its express agreement in the License Agreement to license the sale of spice shakers and spice grinders exclusively to Bektrom and collecting a $75,000 advance in exchange for that right.

12.     Bektrom again submitted Artwork/Samples for nine spice-shaker products and four spice-grinder products to Mrs. Fields on December 3, 2013.  At the time, Bektrom anticipated that the sale of these products would generate approximately $2 million in sales and, as a result of those sales, $160,000 in royalties.  Bektrom again submitted the Artwork/Samples for these products directly to Mrs. Fields' representative, Dustin Finkel.  Dustin Finkel, on behalf of Mrs. Fields, again told Bektrom that Mrs. Fields was not sure that spice shakers and spice grinders were a good fit for the Mrs. Fields' brand and that it would not approve any Artwork/Samples for spice shakers or spice grinders unless and until Bektrom grew the sales of the dry baking mixes.  The License Agreement does not condition Bektrom's ability to license Mrs. Fields' Marks on spice shakers and spice grinders on the its sales of dry baking mixes.

13.     Throughout late December 2013 and early January 2014, Bektrom pressed Mrs. Fields for approval of the Artwork/Samples for spice shakers and spice grinders, but Mrs. Fields continued to ignore Bektrom and unreasonably withhold approval for any spice shakers or spice grinders.

14.     Global Icons, LLC ("Global") served as a broker under the License Agreement. Global introduced Bektrom to Mrs. Fields and was involved in negotiating the License Agreement between the parties.  Global acted as Mrs. Fields' agent in administering the License

Agreement on behalf of Mrs. Fields and in collecting royalty payments from Bektrom for Mrs. Fields.

15.     Global's Senior Vice President of Licensing, Bill McClinton, has provided a written statement to Bektrom that, even though Mrs. Fields had agreed to license spice shakers and spice grinders to Bektrom in the License Agreement, Mrs. Fields decided for strategic purposes to only allow Bektrom to sell the dry baking mixes.  He also confirms that Mrs. Fields wanted to force Bektrom to sell the "core products"—*i.e.*, the dry baking mixes—before Mrs. Fields would approve any of the "ancillary products," such as spice shakers and spice grinders. The License Agreement contains no such distinctions or priorities between the Licensed Products.

16.     Bill McClinton has also stated that he strongly objected to Mrs. Fields' treatment of Bektrom under the License Agreement, including Mrs. Fields' refusal to approve any Artwork/Samples for spice shakers and spice grinders.

17.     Despite knowing that Mrs. Fields never approved any Artwork/Samples for spice shakers and spice grinders submitted by Bektrom, Mrs. Fields' counsel demanded in an August 22, 2014 letter that Bektrom pay an 8% royalty rate on spice shakers and spice grinders.

18.     In January 2014, Bektrom submitted the following products for approval to Mrs. Fields: (1) Batter Bowl + Dry Mix Set; (2) Brownie Pan + Dry Mix Set; (3) Oven Mitt + Dry Mix Set; (4) Pot Holder + Dry Mix Set; (5) Recipe Box Holder + Dry Mix Set v. 1; and (6) Recipe Box Holder + Dry Mix Set v. 2.  The License Agreement gave Bektrom the license to use Mrs. Fields' Marks for these types of products—*i.e.*, dry baking mixes and gift sets.  (*See* License Agreement at § 4 (describing Licensed Products, including dry baking mixes, pancake

11

mixes, etc.) and § 8 (stating that Mrs. Fields was entitled to a 5% royalty on "Baking Mixes and Gift Sets").)

19.     Mrs. Fields, through its Associate Brand Manager, Adam Hertell, initially approved the Artwork/Samples for the Batter Bowl, the Oven Mitt, and the two Recipe Box Holder submissions.  Adam Hertell stated he was holding onto the submissions for the Brownie Pan and the Pot Holder to "ensure [Mrs. Fields is] not in breach of contract with another licensee."

20.     Adam Hertell eventually notified Bektrom that Mrs. Fields could not approve the Brownie Pan and the Pot Holder submissions because they conflicted with Mrs. Fields' agreement with another licensee, Love Cooking.  Adam Hertell also informed Bektrom at that time that Mrs. Fields was withdrawing the approval it had provided for the Oven Mitt because it would also cause Mrs. Fields to be in violation of an agreement with Love Cooking.  The License Agreement contains no limitations on Bektrom's rights based upon Mrs. Fields agreement with any other party.  Indeed, the License Agreement gives Bektrom the exclusive right to make, market, and sell "Baking Mixes and Gift Sets" with Mrs. Fields' Marks.

21.     Mrs. Fields' broker, Global, informed Mrs. Fields that it disagreed that the Brownie Pan submitted by Bektrom would conflict with Mrs. Fields' agreement with Love Cooking, but Mrs. Fields refused to reconsider its position.

22.     Adam Hertell also attempted to justify Mrs. Fields' rejection of the gift sets submitted by Bektrom based on Mrs. Fields' "desire for Bektrom to remain laser focused on selling dry baking mixes."  The License Agreement contains no such condition.

4812-9020-2659.2

23.     Thus, despite expressly agreeing in the License Agreement to grant Bektrom an exclusive license to manufacture, market and sell "Baking Mixes and Gift Sets" using Mrs. Fields' Marks, and collecting an advance of $75,000 from Bektrom for that license, Mrs. Fields took the position during the course of the License Agreement that it could not approve certain gift sets submitted by Bektrom because Mrs. Fields had licensed those products to other licensees.  Bektrom lost hundreds of thousands of dollars in revenue as a result of Mrs. Fields' breaches of the License Agreement.

24.     In or around April 2014, Mrs. Fields, through Dustin Finkel, attempted to withdraw Mrs. Fields' earlier approval on an order Bektrom had already committed to fulfill for $190,000 unless Bektrom paid Mrs. Fields a certain amount of money by an arbitrary deadline set by Mrs. Fields.

## FIRST COUNTERCLAIM
### (Breach of License Agreement)

25.     Bektrom incorporates by reference paragraphs 1 through 24 as if fully set forth herein.

26.     Bektrom and Mrs. Fields are parties to the License Agreement.

27.     Under the License Agreement, Mrs. Fields agreed to permit Bektrom to manufacture, sell, and/or distribute the Licensed Products, including, among other things, spice shakers, spice grinders, baking mixes, and gift sets using Mrs. Fields' Marks.  (License Agreement, §§ 4, 8.)

28.     As set forth in this Counterclaim, Mrs. Fields breached the License Agreement by refusing to approve any Artwork/Samples of spice shakers or spice grinders, and by refusing to

permit Bektrom to manufacture, sell, and/or distribute spice shakers or spice grinders using Mrs. Fields' Marks.

29.     Mrs. Fields also breached the License Agreement by refusing to approve Artwork/Samples of certain gift sets, and by refusing to permit Bektrom to manufacture, sell, and/or distribute certain gift sets using Mrs. Fields' Marks.

30.     Bektrom has been damaged by Mrs. Fields' breach of the License Agreement, and is entitled to a monetary judgment against Mrs. Fields in an amount to be determined at trial. Additionally, as a result of Mrs. Fields' breaches of the License Agreement, Bektrom is entitled to an order and judgment excusing Bektrom from performance under the License Agreement.

## SECOND COUNTERCLAIM
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

31.     Bektrom incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

32.     Implied in the License Agreement is a covenant for the parties to act in good faith and deal fairly with one another.  Under this implied covenant, parties cannot intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract.

33.     A party, such as Mrs. Fields, who retains express power or discretion under a contract must exercise that power or discretion reasonably and in good faith.

34.     As set forth in this Counterclaim, Mrs. Fields exercised its discretion under Section 21.2 of the License Agreement in a way that denied Bektrom the reasonably expected benefit of the parties' bargain.  Specifically, by failing to review or otherwise refusing to respond to Bektrom's requests for approval for certain Artwork/Samples for Licensed Products, by

14

improperly attempting to use its discretion to approve Artwork/Samples for Licensed Products to extract money from Bektrom, by granting approval for Artwork/Samples for Licensed Products only to later withdraw it, and by refusing to review or approve Artwork/Samples for spice shakers, spice grinders, and certain gift sets submitted by Bektrom, Mrs. Fields exercised its discretion outside the range contemplated by Bektrom when it entered into the License Agreement.

35.     Mrs. Fields's bad-faith exercise of its discretion under the License Agreement made it impossible for Bektrom to enjoy the fruits of its bargain with Mrs. Fields.  To wit, by unreasonably withholding approval for Artwork/Samples for Licensed Products submitted by Bektrom, Mrs. Fields prevented Bektrom from producing, manufacturing, and selling Licensed Products that it had paid to license under the License Agreement.  Deprived of its ability to sell Licensed Products by Mrs. Fields' bad-faith conduct, Bektrom was unable to generate the sales revenue to make certain royalty payments under the License Agreement.

36.     Bektrom has been damaged by Mrs. Fields' breach of the implied covenant and is entitled to a monetary judgment against Mrs. Fields in an amount to be determined at trial. Additionally, as a result of Mrs. Fields' bad-faith actions which impeded Bektrom's performance under the License Agreement, Bektrom is entitled to an order and judgment excusing Bektrom from performance under the License Agreement.

### THIRD COUNTERCLAIM
### (Declaratory Relief)

37.     Bektrom incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38.     Section 28 U.S.C. § 2201 allows this court, in a case of actual controversy within its jurisdiction, to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought, and provides that such declaration shall have the force and effect of a final judgment or decree.

39.     Bektrom and Mrs. Fields are parties to the License Agreement and adverse parties in this lawsuit.

40.     Mrs. Fields has asserted that Section 21.2 of the License Agreement gives it the sole discretion to decide whether to approve Artwork/Samples submitted by Bektrom, and that there is nothing in the License Agreement that requires Mrs. Fields to exercise that discretion reasonably or in good faith.

41.     There is an actual controversy between Bektrom and Mrs. Fields regarding their respective rights and obligations under the License Agreement.

42.     Bektrom is entitled to an order and judgment from this Court declaring as follows:

a.      While Section 21.2 of the License Agreement gives Mrs. Fields sole discretion to decide whether to approve Artwork/Samples submitted by Bektrom, that discretion must still be exercised by Mrs. Fields reasonably and in good faith; and

b.      The interpretation of Section 21.2 urged by Mrs. Fields, that there are no limits on the exercise of its discretion to decide whether to approve Artwork/Samples submitted by Bektrom, would render the License Agreement illusory and unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, Bektrom prays for judgment against Mrs. Fields as follows:

4812-9020-2659.2

1.      Judgment in favor of Bektrom be entered requiring that Mrs. Fields pay damages in an amount to be fully determined at trial;

2.      An order declaring that Bektrom's performance under the License Agreement is excused by Mrs. Fields' breaches of the License Agreement and Mrs. Fields' breaches of the implied covenant of good faith and fair dealing inherent in the License Agreement;

3.      For reasonable costs and attorneys' fees to the extent permitted by law, statute or agreement; and

4.      For such other and further relief as deemed appropriate by the Court.

DATED May 5th, 2015.

/s/ Zack L. Winzeler
David M. Bennion
Zack L. Winzeler
PARSONS BEHLE & LATIMER

*Attorneys for Defendant Bektrom Foods, Inc.*

4812-9020-2659.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of May, 2015 that a true and correct copy of the foregoing **AMENDED ANSWER TO COMPLAINT AND AMENDED COUNTERCLAIM** was served upon the following counsel of record through the court's CM/ECF electronic filing system:

**Rod N. Andreason**
randreason@kmclaw.com,aarmstrong@kmclaw.com

**Adam M. Kaas**
akaas@kmclaw.com

**Avery Samet**
asamet@samlegal.com

/s/ Zack L. Winzeler

4812-9020-2659.2