Rod N. Andreason (Bar No. 8853)
  randreason@kmclaw.com
KIRTON | MCCONKIE
400 Kirton McConkie Building
50 East South Temple, Suite 400
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

Bijan Amini, NY #1989052, *Admitted Pro Hac Vice*
Avery Samet, NY #4245965, *Admitted Pro Hac Vice*
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
New York, New York 10017
Telephone: (212) 490-4100
Fax: (212) 490-4208
Email:  bamini@samlegal.com; asamet@samlegal.com

*Attorneys for Plaintiff Mrs. Fields Franchising, LLC*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> BEKTROM FOODS, INC., a North Dakota corporation, <br><br> Defendant. | **RENEWED MOTION TO DISMISS DEFENSES AND COUNTERCLAIMS AND MEMORANDUM IN SUPPORT** <br><br> Case No. 2:14-cv-00776-BSJ <br><br> Judge Bruce S. Jenkins |

Plaintiff Mrs. Fields Franchising, LLC ("MFF"), by and through its counsel of record, respectfully moves to dismiss the amended answer and counterclaims asserted by Bektrom Foods, Inc. ("Bektrom") pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure (the "Federal Rules"). By this Motion, MFF renews its initial motion for judgment on

1

4842-3829-2260.v1

the pleadings (re-characterized as a motion to dismiss by the Court) (the "Initial Motion")
because the amendments provided by Bektrom do not rectify the deficiencies in Bektrom's initial
pleadings.[1]

### INTRODUCTION, PRECISE RELIEF SOUGHT, AND GROUNDS THEREFOR

By the Initial Motion, MFF moved for judgment on Bektrom's affirmative defenses and
counterclaim on the grounds that Bektrom failed to plead plausible facts to support (a) its
allegation of MFF's oral agreement to waive over $750,000 in guaranteed payments (the
"Guarantee") and (b) its allegation that MFF violated the duty of good faith and fair dealing by
refusing to approve certain artwork (the "Artwork") in bad faith.  At oral argument, Bektrom
requested leave to amend its answer and counterclaim in order to add in the details missing from
its initial pleading.  The Court granted a re-characterized Initial Motion as a motion to dismiss
and granted Bektrom's request to replead with the missing details.

Bektrom has abused the Court's indulgence.  The Amended Answer and Counterclaim
now alleges new "facts" which contradict Bektrom's prior positions.  For example, Bektrom now
claims that the purported waiver was written, despite its previous claim (and briefing to this
Court) of an oral waiver.  Bektrom has refused to divulge the specific documents relied upon in
its amended pleading, on the grounds that if it did identify such documents, MFF would use them
to attack the amended pleading.  Nevertheless, the documents incorporated by reference (but not
attached to the Complaint) which MFF *has* been able to identify contradict the new allegations.
Bektrom also asserts new affirmative defenses and new claims for relief.

Bektrom has identified no good faith dispute which would justify allowing this case to

---

[1] The Court decided to re-characterize MFF's initial Rule 12(c) motion for judgment on the pleadings as a motion to dismiss both Bektrom's Answer and Counterclaims.  MFF therefore follows the Court's guidance in bringing this motion pursuant to Fed. R. Civ. P. 12(b)(6).  In the alternative, MFF also moves pursuant to Fed. R. Civ. P. 12(f) to strike Bektrom's affirmative defenses as insufficient.

proceed to discovery.  Bektrom concedes that it agreed to pay MFF the Guarantee and that it failed to do so.  Its previous oral waiver argument was not plausible to begin with (and, apparently, lacked all basis); the new *written* waiver argument is contradicted by the very documents on which Bektrom relies.  The Artwork claim previously lacked specifics of submitted work; for its current claim, Bektrom either refuses to divulge specifics or alleges specifics that are contradicted by the documents it identifies.  Such gamesmanship does not cure the lack of the requisite "plausibility" that Bektrom's prior pleading suffered, but reconfirms it. By this Motion, MFF seeks an order dismissing Bektrom's defenses and counterclaims, clearing the way for judgment in MFF's favor.[2]

## STATEMENT OF FACTUAL ALLEGATIONS

1.     MFF respectfully refers the Court to the statement of facts presented in the previous briefing and incorporates the same by reference rather than burden the Court with a lengthy recitation.  Below is a summary of the pertinent new allegations asserted in Bektrom's Amended Answer and Counterclaim.

A. New and Inconsistent Allegations Seeking to Deny That the License Agreement is Valid, Enforceable, and Binding

2.     Bektrom's Initial Answer admitted the Complaint's allegation that "MFF and Bektrom are parties to a valid, enforceable, and binding contract – the License Agreement." (Complaint ¶ 22; Answer ¶ 22).

3.     At oral argument, Bektrom conceded that but for its affirmative defenses and counterclaim, Bektrom otherwise owed the unpaid $750,000 minimum Guarantee.  (Transcript of

---

[2] In the event the Court grants MFF's motion with respect to Bektrom's affirmative defenses but not Bektrom's counterclaims, MFF will move the Court for an order granting judgment on MFF's claim, but reserving entry of judgment until after resolution of Bektrom's counterclaims.

April 15, 2015 hearing ("4.15 Tr.") 15:12-25).[3]

      4.     The Amended Answer states "Bektrom admits that Bektrom and Mrs. Fields are parties to the License Agreement.  The remainder of the allegations in paragraph 22 of the Complaint are legal conclusions for which no factual response is required.  To the extent a factual response is required, Bektrom denies the remaining allegations of paragraph 22 of the Complaint."  (Amended Answer ¶ 22).

      5.     The Amended Answer asserts that Mrs. Fields fraudulently induced Bektrom to enter into the License Agreement by asserting that "Debbie Fields was returning to Mrs. Fields and would be promoting the Mrs. Fields' brand." (Tenth Affirmative Defense).[4]  This fraudulent inducement claim contradicts the Initial Answer's admission that the License Agreement was "valid, enforceable, and binding."

      6.     The Amended Answer contains no particularized allegations regarding when, how, by whom, and to whom the statement was made, or that Bektrom reasonably relied upon it.

      7.     The License Agreement also contains a merger clause which provides that "[t]his Agreement shall constitute the entire understanding of the parties with respect to the subject matter contained herein, superseding all prior and contemporaneous promises, warranties, representations, covenants, agreements and understandings, whether written or oral pertaining thereto." (License Agreement ¶ 42).

      8.     Despite the allegation that the License Agreement is void because of MFF's alleged fraudulent inducement, Bektrom nevertheless asserts three counterclaims arising under and premised upon a valid, binding and enforceable License Agreement.

---

[3] Attached as Exhibit A to the June 12, 2015 Declaration of Rod Andreason, submitted in support of this motion (the "Andreason Decl.").

[4] The initial Answer contained a boilerplate fraudulent inducement defense which Bektrom ignored in the prior briefing.

B. <u>New and Inconsistent Allegations Concerning Waiver</u>

9.      Previously, and in response to the Initial Motion, Bektrom argued that the purported waiver on which it relied was oral.

10.     The Initial Motion argued that Bektrom's defense that MFF affirmatively waived the $750,000 Guarantee failed as a matter of law because: (a) the License Agreement provided that waivers must be in writing and signed by both parties to be effective; (b) the License Agreement provided that MFF's acceptance of Royalty Payments would not be deemed a waiver of the Guarantee; (c) a non-written waiver would violate the Utah Statute of Frauds and (d) that, without any further specificity, the assertion that MFF waived the central monetary component of the License Agreement "in lieu of" Royalty Payments to which MFF was already entitled – was absurd and implausible on its face.  (Initial Motion at 9-12).

11.     Bektrom responded that the Statute of Frauds' prohibition on oral waivers did not apply because:

> (a) "The 'one-year clause' of the Statute of Frauds…has been interpreted 'very liberally' by Utah courts." (Memorandum in Opposition to Motion for Judgment on the Pleadings ("Opp. Br.") at 19);
>
> (b) the "one-year clause of the Statute of Frauds relied upon by Mrs. Fields has no application to the instant case….the License Agreement was nonetheless capable of being performed within one year…" (Opp. Br. at 19); and
>
> (c) "Because the License Agreement is not governed by the Statute of Frauds, Mrs. Fields' waiver of the minimum guarantees is also not subject to the Statute of Frauds."  (Opp. Br. at 19-20).

12.     Bektrom also argued that Section 39 of the License Agreement, which barred waivers except those in writing, did not apply because "under Utah law 'the presence of a non-waiver provision…is not dispositive[.]'" (Opp. Br. at 18) (ellipsis in original).

4842-3829-2260.v1

13.     Finally, Bektrom argued that the non-written agreement by which MFF would accept Royalty Payments instead of the Guarantee was an actual agreement and not merely based on a course of dealing argument that MFF accepted Royalty Payments from Bektrom.  (Opp. Br. at 18).

14.     To the extent there was any ambiguity in its prior pleading and brief, Bektrom confirmed that the alleged waiver was oral at argument:

> Mr. Bennion:  No, we pled specifically that the parties agreed and we can put on our witness who will say we had an agreement. They specifically agreed that in lieu of the guaranteed payments the only payments that needed to be made were on actual royalties on actual sales.
> The Court:  Was there a conversation with somebody?
> Mr. Bennion:  Yes.
> The Court: And do you know who they are?
> Mr. Bennion:  Standing here today I don't know.  I believe that the man on my side was named Ernie Barbella.
> The Court:   And he claims that he had a conversation with somebody?
> Mr. Bennion:  Yes.

(4.15 Tr. at 22:21-23:8).

15.     Without explanation for its change in course, Bektrom now asserts for the first time that MFF agreed to waive its contractual Guarantee in writing:

> Mrs. Fields made a written offer to Bektrom under which Mrs. Fields would agree to source a new supplier for the Licensed Products under the License Agreement and waive the minimum guarantees in exchange for Bektrom making certain unearned royalty payments. Bektrom responded in writing that it would not be able to make the specific payments proposed by Mrs. Fields, and presented a counteroffer to Mrs. Fields' offer, which Mrs. Fields, through Mr. Finkel, accepted in writing.

(Amended Answer, Ninth Affirmative Defense).

4842-3829-2260.v1

16.    In attempting to identify this alleged written waiver and narrow the scope of the

parties' dispute, MFF's counsel asked Bektrom's counsel for a copy of the writings referred to in

this defense.

> Bektrom's amended pleading appears to incorporate within it the
> following documents:
>
> 1)    Written offers, counteroffers and acceptance referred in
> Ninth Affirmative Defense;
> 2)    December 3, 2013 submission of spice shaker/ grinder
> products to Mrs. Fields.  Par. 12;
> 3)    Written statement by Bill McClinton – Par. 15-16;
> 4)    January 2014 submission of products for approval (Par. 18);
> 5)    Written communication referred to in Par. 19; and
> 6)    Written communication referred to in Par. 22.
>
> Since the above documents are discussed specifically in Bektrom's
> new pleading, we assume that you have copies of them in your
> office.  Would you provide us with a copy of the above documents
> at your earliest availability, so that we may review them in
> preparing our response to Bektrom's amended pleading?"

(Andreason Decl. Ex. B, email from MFF's counsel, Rod Andreason, to Bektrom's counsel,

David M. Bennion and Zack L. Winzeler, May 21, 2015).  Bektrom refused:

> We are not sure what you mean by the statement that Bektrom's
> amended answer and counterclaim "incorporates" within it the
> referenced writings.  To the contrary, our pleading makes
> allegations regarding various communications, including those
> writings.  It appears to us that what Mrs. Fields is trying to do is to
> challenge Bektrom's pleading under Rule 12—not on the basis of
> the allegations thereof, but on the strength of the evidence
> supporting Bektrom's allegations.  Such a challenge under Rule 12
> is improper.  In any event, most of the referenced communications
> occurred between employees of Bektrom and employees or agents
> of Mrs. Fields, so presumably Mrs. Fields has possession of those
> documents.

(Andreason Decl. Ex. B, email from Bektrom's counsel, David M. Bennion, to MFF's counsel,

Rod Andreason, May 28, 2015).

17.    Nonetheless, MFF has attempted to locate the April 2014 exchange of writings

referred to in the Ninth Affirmative Defense and has identified an exchange of emails between Mr. Finkel, Mr. Barbella and Ms. Reed which seem closest to the allegations (such emails are incorporated by reference in Bektrom's pleadings and attached as Andreason Decl. Ex. C).[5]   The exchange apparently relates to the parties' pre-suit efforts to resolve Bektrom's failure to pay the Guarantee.  (Id.).  The "counteroffer" presented by Bektrom, referred to in the Ninth Affirmative Defense, was that Bektrom would:

> (a)  Pay $75,000 to MFF as follows:  $40,000 by June 1, 2014, followed by four monthly installments of $8,750 beginning July 1, 2014; and
>
> (b)  Pay accrued royalties on all sales until the transfer of the business to a company.

(Id.).  Bektrom explained that because of its "tight position" on an impending 190,000 unit shipment, it could not begin making payments until June 1, 2014. (Id.).

18.     The sum total of the "accept[ance] in writing" by Mr. Finkel (Affirmative Answer, Ninth Affirmative Defense) was as follows:

> We are fine to [ac]cept the proposal, but we cannot release the 190K order until we are paid the $40K.  If we are aligned, we can begin drafting up the documentation.
>
> Let me know.

(Andreason Decl. Ex. C).  The email is simply not an acceptance of Bektrom's offer.  Rather it unequivocally states that Bektrom's counteroffer would only be acceptable if Bektrom accepted MFF's alteration of Bektrom's offer.  Bektrom rejected that counteroffer and never paid the

---

[5] Because the emails are incorporated by reference in the Answer and Counterclaims, they are therefore properly considered on a motion to dismiss.  *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") *quoting GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997).

4842-3829-2260.v1

$75,000; MFF called a default for non-payment of the Guarantee, then terminated the License Agreement when Bektrom failed to cure the default and promptly brought this action.[6]

C. New and Inconsistent Allegations Concerning MFF's Alleged Lack of Good Faith in Not Approving Artwork

19.     In its initial Counterclaim, Bektrom asserted that MFF abused its discretion in failing to approve artwork submitted by Bektrom in breach of an implied duty of good faith and fair dealing.  MFF moved to dismiss the Counterclaim because it failed to provide any specifics concerning the artwork submitted and failed to plead that MFF used its absolute discretion to approve artwork in bad faith.  In its amended pleading, Bektrom now asserts three related counterclaims:  breach of contract, breach of the implied duty of good faith and fair dealing, and a claim for declaratory judgment.  As before (Counterclaim ¶ 10), Bektrom continues to assert four types of "misuse[s] of discretion"  (Amended Counterclaims at ¶ 10), each of which is discussed below:

(i)     *Failing to Review, Let Alone Approve, Artwork*

20.     The Amended Counterclaims plead no facts concerning this category of "regularly misused discretion."  (Id.).   Accordingly, Bektrom has not even attempted to "flesh out" this aspect of its claim.[7]

(ii)     *Improperly Withholding Approval for Artwork to Extract Payment*

21.     The Amended Counterclaims plead that "[i]n or around April 2014, Mrs. Fields

---

[6] It was therefore misleading of counsel for Bektrom to argue at oral argument on the initial motion that it was plausible that MFF had waived the Guarantee because it "waited" to file its complaint.  *See* 4.15 Tr. 22:7-10 ("They went through the whole year, more than a year, before they filed their complaint.  That connotes, or that implies that they didn't think they had that payment coming.")  That argument is impossible to square with the email exchange upon which Bektrom now bases its waiver defense.

[7] Bektrom's silence on this point is surprising given counsel's affirmative statement at oral argument concerning this allegation.  (4.15 Tr. at 19:13-17) ("Mr. Bennion: But what the client has told me is we submitted artwork and they wouldn't even respond.  They didn't say no, they just didn't answer.")  There is no such specified allegation in the Amended Counterclaims.

9

through Dustin Finkel, attempted to withdraw Mrs. Fields' earlier approval… unless Bektrom paid Mrs. Fields a certain amount of money by an arbitrary deadline set by Mrs. Fields." (Amended Counterclaims ¶ 24).

22.     However, this allegation appears to be nothing more than a different spin on the same email exchange Bektrom has mischaracterized as a waiver.  (*See* Andreason Decl. Ex. C). The request that Bektrom pay a specified amount by a specified deadline was stated as the condition on which MFF would agree to modify and terminate the contract and settle Bektrom's defaults.   The emails do not state that they are "withdrawing" prior approval of specified Artwork – and indeed have nothing to do with Artwork whatsoever -- although MFF was hardly obligated to permit Bektrom to continue to use previously approved Artwork when Bektrom was unwilling to either meet its obligations under the License Agreement or agree to MFF's settlement proposal.

(iii)     *Retracting Approval for Artwork After Bektrom Had Expended Resources*

23.     Bektrom alleges, as it did in its initial Counterclaim, that MFF misused its discretion in "initially granting approval…only to later withdraw approval after Bektrom had expended resources developing and manufacturing the Licensed Products." (Amended Counterclaims ¶ 10).

24.     Bektrom alleges that that MFF initially approved Artwork for an "Oven Mitt" but then "eventually" withdrew it after determining that such approval would "cause Mrs. Fields to be in violation of an agreement with Love Cooking [another licensee]." (Amended Counterclaim ¶ 20).

25.     Again, Bektrom's counsel refused upon request to provide the documents relied upon for this allegation. (Andreason Decl. Ex. B).   However, the emails which Bektrom quotes

4842-3829-2260.v1

and relies upon in the Counterclaim to demonstrate MFF's withdrawal of its prior approval were sent on the **very same day** as the approval was initially granted.  (Andreason Decl. Ex. D)

26.     Bektrom alleges no facts to support a plausible inference that it "expended resources developing and manufacturing" the Oven Mitt during the several hours between the alleged initial approval and subsequent withdrawal on the same day.

27.     Moreover, the License Agreement does not provide a license for oven mitts. Instead, the License Agreement limits the license to three specific types of merchandise:

> *a.*   Spice shakers (e.g., cinnamon sugar, sprinkles, ice cream toppings),
>
> *b.*   Spice grinders (e.g., cinnamon essence, candy cane), and
>
> *c.*   Dry baking mixes (e.g. cupcakes, cookies, cake mixes), pancake mixes (e.g. chocolate chip, blueberry, maple syrup), biscuit mixes, brownies and other baking mixes as opportunities arise.

(License Agreement §4).  Nothing in the License Agreement obligated MFF to approve products outside of the Licensed Products for sale by Bektrom.  To the contrary, the License Agreement provided that " [n]o license is granted hereunder for the use of the Property for any purpose other than on or in connection with the Licensed Products as set forth herein." (License Agreement § 18.1).   Finally, any doubt as to the propriety of Artwork was left to MFF's "sole discretion" and MFF "shall have absolute and final approve of all such Artwork/ Samples." (License Agreement § 21.2).

> *(iv)    Refusal to Approve Artwork for Spice Shakers and Grinders*

28.     Bektrom alleges that "[i]n 2012, Bektrom submitted Artwork/ Samples for spice shakers and spice grinders to Mrs. Fields."  (Amended Counterclaims ¶ 11).  Bektrom provides no further detail regarding when, how, or what these 2012 Artwork consisted of.  Bektrom also alleges that "on at least two occasions in 2012", MFF told Bektrom that MFF "was not sure that

4842-3829-2260.v1

the spice shakers and spice grinders were a good fit for Mrs. Fields' brand."  (Id.).

29.     Bektrom alleges that on December 3, 2013, it "submitted Artwork for nine spice-shaker produced and four spice-grinder products to Mrs. Fields on December 3, 2013."  (Id. at 12).  Nevertheless, Bektrom has refused to identify these documents to MFF which are referred to and relied upon in its Counterclaim.  (Andreason Decl. Ex. B).  This, despite the fact that the Court specifically asked for this specificity in granting leave to replead.  (4.15 Tr. 29:10-11) ("I am frankly interested in what was submitted, when it was submitted.")

30.     Bektrom alleges that at the time it "anticipated" that these products would have generated $2 million in sales and a corresponding $160,000 in royalties (Amended Counterclaims ¶ 12) – a 100% increase in sales and royalties over Bektrom's total sales/royalties for all products over the three year life of the contract.[8]

31.     Bektrom alleges that it holds a "written statement" from a third-party concluding that Mrs. Fields "decided for strategic purposes" to deny approval for these products.  (Id. ¶¶ 15-16).  Nevertheless, Bektrom has refused to provide the "written statement" incorporated and relied upon in these paragraphs.  (Andreason Decl. Ex. B).

## ARGUMENT

### I.      STANDARDS ON MOTION

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), Bektrom must plead "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk*, 493

---

[8] *See* Complaint and Amended Answer at ¶¶ 13, 15 (admitting that Bektrom paid approximately $160,000 in royalties over the course of the relationship).

F.3d at 1177 (emphasis in original).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009).

As discussed above, Bektrom has based its Amended Counterclaims upon the existence of several discreet documents, but has refused to identify or share those documents with MFF on the grounds that MFF would use those documents to dismiss the Amended Counterclaims. Given its refusal at this stage of the litigation, Bektrom should not be afforded inferences in its favor from such documents.  The Tenth Circuit reasoned that defendants *must be able* to rely on documents incorporated by reference in complaints because "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).  Here, Bektrom is attempting to do just that – trying to reach discovery by not attaching dispositive documents.  Nevertheless, where MFF has been able to identify the documents which Bektrom seems to relying upon, the Court can properly consider those documents in the Rule 12 context.  (Id.).

Finally, the Court need not accept as true those allegations made in Bektrom's amended pleading which contradict its initial Answer and Counterclaim.  *See Kant v. Columbia University*, 2010 WL 807442, at *6-7 (S.D.N.Y. March 9, 2010) (dismissing amended complaint when Plaintiff amended his allegations concerning the time at which defendant promised to offer plaintiff tenure in a "clumsy" attempt to avoid the statute of frauds).  Where a party changes and contradicts its original statement of facts in order to respond to a motion to dismiss "a court is authorized to accept the facts described in the original complaint as true".  *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).  If the rule were

4842-3829-2260.v1

otherwise, the requirement that proposed amendments not be futile would be merely an exercise in gamesmanship.  *See generally Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.")

## II.     THE COURT SHOULD DISMISS BEKTROM'S WAIVER DEFENSE

Bektrom's belated claim of a written waiver defense contradicts without explanation the oral waiver it previously argued to this Court in both written submissions and at oral argument. *See supra* ¶¶ 9-18.  In addition, the documents Bektrom claims constitute the waiver show nothing of the sort.  Rather than show a meeting of the minds,[9] the documents conclusively demonstrate an offer by Bektrom to settle the Guarantee dispute, followed by a refusal by MFF to agree to Bektrom's proposal absent Bektrom's agreement to MFF's counter proposal, something Bektrom does not and cannot claim that it ever agreed to or complied with. Bektrom's entitlement to all reasonable and plausible inferences does not allow it to rely on mischaracterizations of documents to make arguments contradicted by the documents themselves.  *See In re FX Energy, Inc. Sec. Litig.*, 2009 WL 1812828 at *6 (D. Utah Jun. 25, 2009).  "If the documents on which the Plaintiffs rely contradict the allegations of the complaint, the documents control and a Court need not accept as true the allegations in the complaint." (Id.) (internal quotations omitted).[10]  For these reasons, and for the reasons adduced in the Initial Motion, MFF renews its motion to dismiss the Ninth Affirmative Defense.

---

[9] *Cf.* Opp. Br. at 17.  ("Mrs. Fields is correct in stating that a party asserting waiver must show a 'distinct' intention to relinquish a right. Motion at 10 (citing *Soter's v. Deseret Federal Sav. & Loan Assn.*, 857 P.2d 935, 942 (Utah 1993).")

[10] In *In re FX Energy*, as here, plaintiffs' complaint relied upon certain documents but failed to attach copies.  After defendants provided the documents on their Rule 12(b)(6) motion to dismiss, the Court relied upon *GFF Corp.*, cited above, to consider the mischaracterized documents. (Id.).

### III.   THE   COURT   SHOULD   DISMISS   BEKTROM'S   FRAUDULENT INDUCEMENT DEFENSE

As discussed above, Bektrom previously admitted that the License Agreement was "valid, binding, and enforceable." *Supra* ¶¶ 2-4.  In addition, Bektrom asserts counterclaims against MFF arising under the same License Agreement.  Nevertheless, Bektrom has amended its previous boilerplate fraudulent inducement defense to assert that MFF made misrepresentations "including, but not limited to," a representation that Debbie Fields was returning to MFF. (Amended Answer, Tenth Affirmative Defense).

First, as discussed above, the Court did not grant Bektrom leave to alter its previous admissions and assert contradictory new defenses.  The pleading that the License Agreement was procured by fraud is entirely inconsistent with the previous admission that the License Agreement is valid, binding and enforceable.[11]  It is also inconsistent with Bektrom's three counterclaims, each of which is premised upon a valid and binding License Agreement.

Second, the defense suffers from all of the defects discussed in the previous briefing. It alleges fraud by MFF but fails specify any of the details upon which the Court could evaluate the defense, i.e., who made the fraudulent statement, when it was made and whether Bektrom relied upon it.  *See*, *e.g*., *Bose Corp. v. Ejaz*, 732 F.3d 17, 22 (1st Cir. 2013) ("Fraud is an affirmative defense that must be pleaded with particularity.")[12]  Given that the License Agreement is a fully integrated agreement (License Agreement § 42) between two commercial

---

[11] In fact, the only time Utah law allows extrinsic evidence against an integrated contract is when such evidence is offered in support of an argument that the entire contract (including the integration clause) is not valid.  *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 15, 182 P.3d 326, 330 (Utah 2008) ("Where a contract by an explicit term purports to be integrated, we will nevertheless allow extrinsic evidence *in support of an argument that the contract is not, in fact, valid* for certain reasons that we have specified." (emphasis added).

[12] *See also Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 1066932, at *7 (E.D. Pa. Apr. 16, 2009) ("Pursuant to Rule 9(b), parties must plead with particularity whenever alleging fraud—including allegations of fraud contained in an affirmative defense."); *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012) ("Rule 9(b) applies to claims and defenses…A court may strike an affirmative defense as insufficient as a matter of law if it fails to comply with Rule 9(b).")

4842-3829-2260.v1

entities, Bektrom's belated assertion of this fraudulent inducement defense, after termination of the contract and under these circumstances should not be afforded any weight.

## IV.    THE COURT SHOULD DISMISS BEKTROM'S COUNTERCLAIMS

For the reasons set forth above, Bektrom has wholly failed to deliver on its promised allegations.  Therefore, MFF renews its Initial Motion to dismiss.

### A.  The Court Should Dismiss Bektrom's New Breach of Contract Claim

Bektrom's new breach of contract claim is simply a re-characterization of its previous claim for breach of the implied duty of good faith and fair dealing.  For all the reasons adduced above and before, the Court should dismiss this claim as well.

The Court should dismiss the breach of contract claim for one additional reason.  Unlike the good faith claim, a breach of contract claim is limited to the express terms of the License Agreement.  Here, the License Agreement provided MFF with "the sole discretion" and the "absolute and final approval of all such Artwork/ Samples."  (License Agreement §21.2).  Even if Bektrom had pled plausible facts concerning MFF's denial of submitted Artwork (which it has not), Bektrom has failed to allege any breach of any provision of the License Agreement.  Any claim that MFF misused its discretion can only, at best, be a claim for a breach of the implied duty of good faith and fair dealing.

### B.  The Court Should Dismiss Bektrom's Claim for Breach of the Duty of Good Faith

For the reasons stated above and in the Initial Motion, Bektrom's claim for breach of the duty of good faith and fair dealing in approving Artwork should be likewise dismissed for failure to state plausible facts in support of the claim.

At best, the Amended Counterclaims allege a series of business decisions by MFF not to approve Artwork which Bektrom contends should have been approved.   The Amended

16

4842-3829-2260.v1

Counterclaims allege that MFF's exercise of its discretion deprived Bektrom of "the reasonably expected benefit of the parties' bargain." (Amended Counterclaims ¶34).   However, the expectation of the parties as demonstrated by the express language of the License Agreement was that MFF would have "sole" and "absolute" discretion.   The Tenth Circuit addressed this very issue under Kansas law:

> Plaintiffs correctly state that Kansas law reads an obligation to deal fairly and in good faith into almost every contract.  The purpose of the good faith doctrine is to protect the reasonable expectations of the parties.  The doctrine comes into play where a contract gives one party some discretion to implement a contract provision. Although the doctrine is generally implied for all contract provisions, it is irrelevant where the contract is drawn so as to leave a decision to the "uncontrolled discretion" of one of the parties. In such a case, the parties contracted to allow one of them the unconditional right to act, and an implied promise to deal fairly has no purpose.   Under the plain language of the contract [defendant] has no obligation to perform, and plaintiffs have no right to terminate the contract for [defendant's] nonperformance. We understand such language to allow [defendant] "uncontrolled discretion" as to whether it will produce or sell Skyfox. [Defendant's] termination of the Licensing Agreement does not violate the parties' reasonable expectations.

*Flight Concepts Ltd. P'ship v. The Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994) (internal citations and quotations omitted).

In addition, despite being challenged by MFF, Bektrom has pled no facts that MFF undertook any of the actions which it has alleged to have taken *in bad faith*.  There is, for example no plausible inference of bad faith from a same-day revocation of approval for a proposed product outside the scope of the License Agreement on the express grounds that permitting Bektrom to market it would be inconsistent with MFF's obligations to another licensee.  As such, the Counterclaim remains the same plea for discovery as before.  *See*, *e.g*., Opp. Br. at 15 ("Only discovery in this case will reveal whether Mrs. Fields had any reason at all for refusing to review and/ or disapproving Bektrom's submissions."); Opp. Br. at 14 ("Bektrom

would have no way of knowing whether Mrs. Fields exercise of discretion under the License Agreement was justified by some business reason."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Vega v. Davis*, 572 Fed. Appx. 611, 616 (10th Cir. 2014) (unpublished) (complaint must be dismissed under *Iqbal* even where plaintiff lacks access to relevant information).

   C.   The Court Should Dismiss Bektrom's Claim for Declaratory Relief

   Bektrom's third counterclaim seeks an order from the Court that (a) MFF's sole discretion under the License Agreement should have been exercised in good faith and (b) MFF's interpretation of the License Agreement is wrong.  Declaratory judgment is not an appropriate tool to adjudicate past conduct or to proclaim liability for a past act.  *Lawrence v. Kuenhold*, 271 Fed. Appx. 763, 766 (10th Cir. 2008) ( "a declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.");  *Utah Animal Rights Coalition v. Salt Lake Cty. Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004)(McConnell, J., concurring) ("a declaratory judgment involving past conduct that will not recur is not justiciable.")  *See also U.S. v. Oklahoma Gas & Elec. Co.*, 2015 WL 224911 at *12 (Jan. 15, 2015) (collecting cases).

## CONCLUSION

   For the reasons set forth above, Plaintiffs respectfully request that this Court dismiss Bektrom's affirmative defenses and counterclaims, and awarded such other and further relief as it may find appropriate.

4842-3829-2260.v1

DATED this 12th day of June, 2015.

Respectfully submitted,

KIRTON MCCONKIE

By:  /s/ Rod N. Andreason
        Rod N. Andreason
        Attorneys for Plaintiff Mrs. Fields
        Franchising, LLC

Of Counsel:

STORCH AMINI & MUNVES PC

Bijan Amini, Esq. (*Admitted Pro Hac Vice*)
Avery Samet, Esq. (*Admitted Pro Hac Vice*)

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2015, I caused a true and correct copy of the foregoing **RENEWED MOTION TO DISMISS DEFENSES AND COUNTERCLAIMS AND MEMORANDUM IN SUPPORT** to be delivered by the method indicated below to the following:

| | | |
|---|---|---|
| [   ] | U.S. MAIL | David M. Bennion |
| [   ] | HAND DELIVERY | *dbennion@parsonsbehle.com* |
| [   ] | FAX TRANSMISSION | Zack L. Winzeler |
| [   ] | FEDERAL EXPRESS | *zwinzeler@parsonsbehle.com* |
| [ X ] | CM/ECF | Parsons Behle & Latimer |
| | | 201 South Main Street, Suite 1800 |
| | | Salt Lake City, Ut  84111 |

/s/ Lisa Sledge

20

4842-3829-2260.v1