Rod N. Andreason (Bar No. 8853)
  *randreason@kmclaw.com*
Adam M. Kaas (Bar No. 13267)
  *akaas@kmclaw.com*
KIRTON | MCCONKIE
400 Kirton McConkie Building
50 East South Temple, Suite 400
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

Bijan Amini, NY #1989052, *Admitted Pro Hac Vice*
Avery Samet, NY #4245965, *Admitted Pro Hac Vice*
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
New York, New York 10017
Telephone: (212) 490-4100
Fax: (212) 490-4208
Email:  *bamini@samlegal.com; asamet@samlegal.com*

*Attorneys for Plaintiff Mrs. Fields Franchising, LLC*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> BEKTROM FOODS, INC., a North Dakota corporation, <br><br> Defendant. | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION TO DISMISS DEFENSES AND COUNTERCLAIMS AND MEMORANDUM IN SUPPORT** <br><br><br> Case No. 2:14-cv-00776-BSJ <br><br> Judge Bruce S. Jenkins |

Plaintiff Mrs. Fields Franchising, LLC ("MFF"), by and through its counsel of record,

submits this reply memorandum of law in further support of its renewed motion to dismiss the

1

amended answer and counterclaims (the "Motion") of Bektrom Foods, Inc. ("Bektrom")

pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure (the "Federal

Rules").

## INTRODUCTION

A review of Bektrom's opposition brief (and its Amended Answer and Counterclaims)

demonstrates that Bektrom has no defenses to MFF's straightforward contract claim.  In the face

of an unambiguous License Agreement, Bektrom's Amended Answer attempts to manufacture

defenses from nothing by misstating or refusing to show the communications on which those

defenses are based, and the pleading correspondingly lacks any plausibility.  According to

Bektrom, an email stating "If we are aligned, we can begin drafting up the documentation"

constitutes a waiver.  Bektrom then alleges that a License Agreement providing rights to three

specific categories of items (baking mixes, spice shakers, and spice grinders) somehow also

grants it with the right to produce a vast and unenumerated array of items so long as they are part

of a "gift set."  Similarly, the Amended Answer asserts that MFF approved certain gift sets but

then "eventually" disapproved them later, allegedly causing Bektrom damages, while declining

to disclose that the approval was withdrawn within hours.  Similarly, according to the Amended

Complaint, MFF declined to approve the Artwork/Samples for spice shakers and grinders

submitted by Bektrom because they were not a "good fit" for the brand, while ignoring that the

License Agreement expressly provides MFF with the "sole discretion" to disapprove of

submissions.  In short, Bektrom is engaging in gamesmanship and creating a tempest in a teapot

in order to evade its monetary obligations.

## REPLY TO BEKTROM'S LATEST FACTUAL ALLEGATIONS

In opposition to MFF's renewed Motion to dismiss, Bektrom asserts four new factual allegations not contained in the previous pleadings and briefing.

### A.  New Facts Regarding the Nature of the Alleged Waiver

Bektrom asserts in its Opposition that its counsel investigated the alleged waiver after the April 15, 2015 hearing and "learned, in addition to oral conversations, some of those communications occurred by email." (Opp. Br. at p. 28).  This statement contradicts the Amended Answer, which has been rewritten to assert that the waiver was written, not oral. (Amended Answer at Ninth Affirmative Defense).  Bektrom has now asserted three inconsistent waiver allegations: that (1) the waiver was oral (*see* Motion at pp. 5-6, 13-14); (2) the waiver was written (Amended Answer at Ninth Affirmative Defense); and (3) the waiver was both written and occurred through multiple "oral conversations." (Opp. Br. at p. 28).  The Court need not accept these inconsistent pleadings as true.

### B.  New Facts Regarding the Substance of the Alleged Waiver

As discussed in the Motion, Bektrom refused to provide the emails referred to in its Ninth Affirmative Defense.  Now that MFF has discovered those emails on its own and that they say the exact opposite of what was alleged, Bektrom has proffered a tortured reading of them. Bektrom alleges that an email – which (1) says "If we are aligned, we can begin drafting up documentation.  Let me know." and (2) adds a term about the timing of payment – represents a waiver of a $750,000 guarantee.  (Andreason Decl. at Ex. C).  All this, where the License Agreement requires a modification to be signed by both parties (License Agreement at § 39) and where Bektrom never made the payment contemplated by this alleged proposed settlement.

3

(Andreason Dec. at Ex. A ("4.15 Tr.") at 16:1-15; Amended Answer at ¶¶ 14-17).

### C. New Facts Regarding an Alleged Exclusive License to "Gift Sets"

Bektrom now asserts that the License Agreement provided it with an exclusive license to "gift sets." The License Agreement does nothing of the sort. (*See* License Agreement at § 4) (specifically defining the exclusive license as: "(i) spice shakers (e.g. cinnamon sugar, sprinkles, ice cream toppings), (ii) spice grinders (e.g. cinnamon essence, candy cane), (ii) dry baking mixes (e.g. cupcakes, cookies, cake mixes), pancake mixes (e.g. chocolate chip, blueberry, maple syrup), biscuit mix, brownies and other baking mixes as opportunities arise (collectively, "**Licensed Products**")."). Bektrom provides no definition or limitation regarding these "gift sets" and makes no attempt to fit that definition into Section 4 of the Agreement. Bektrom rhetorically asks why MFF would allegedly approve some "gift sets" if there was no exclusive license. (Opp. Br. at p. 22 n.6). The question answers itself. The "inference" that approving other products, allegedly certain "gift sets," meant that MFF granted an exclusive license to any and all "gift sets" – even for products already licensed to others – is not an inference but a giant leap of imagination.

Bektrom also fails to respond to the misleading nature of its allegations about MFF's decision to retract approval for certain "gift sets" after discovering that the products were subject to an outstanding license. As noted in the Motion, Bektrom alleges that "withdr[ew] approval after Bektrom had expended resources developing and manufacturing the Licensed Products" (Amended Counterclaims at ¶ 10), and Bektrom refused to provide the corresponding emails, which show that the retraction was sent mere hours after its initial email response. (Andreason Dec. at Ex. D). Bektrom's opposition is completely silent about this issue.

D.  **New Facts Concerning Spice Shakers and Grinders**

Now, in an opposition brief, Bektrom provides an unsigned letter purporting to show that on December 3, 2013, Bektrom submitted Artwork/Samples for spice shakers and grinders to MFF. (July 13, 2015 Declaration of Zack L. Winzeler ("Winzeler Dec.") at Ex. 1).  However, as of December 2013, even if the Court is inclined to accept this allegation as true, Bektrom was already in default and has failed to pay the second $150,000 Guarantee installment as required by the License Agreement.  (Complaint at ¶ 14; Amended Answer at ¶ 14; License Agreement at § 10).

**LEGAL ARGUMENT**

I.     **MFF IS ENTITLED TO DISMISSAL OF BEKTROM'S WAIVER DEFENSE**

Bektrom defends its inconsistent waiver assertions on the grounds that "it never asserted" that the waiver was oral.  (Opp. Br. at 27-28).  This is demonstrably false.  As laid out in the Motion, Bektrom argued that (1) the contract's requirement that the waiver be in writing could itself be waived (Brief in Opposition to Initial Motion ("Initial Opp. Br.") at p.18), (2) the Statute of Frauds requirement that the waiver be in writing was inapplicable (Initial Opp. Br. at pp. 19-20) and (3) the waiver occurred through actual conversations between Bektrom and MFF.  (4.15 Tr. at 22:21-23:8).  Bektrom's current argument that "in addition to oral conversations, some of these communications occurred by email" (Opp. Br. at p. 28) has no support whatsoever in the pleadings, which alleges only a written waiver.   (Amended Answer at Ninth Affirmative Defense).

The emails Bektrom now points to flatly contradict the assertion that the parties entered

5

into an agreement to waive anything.  *See In re FX Energy, Inc. Sec. Litig.*, 2009 WL 1812828,

at *6 (D. Utah Jun. 25, 2009).  *See also Sotor's Inc. v. Deseret Federal Sav. & Loan Assn.*, 857

P.2d 935, 942 (Utah 1993) (party asserting waiver must show a "distinct" intention to relinquish

a right).

## II.   MFF IS ENTITLED TO DISMISSAL OF BEKTROM'S FRAUDULENT INDUCEMENT DEFENSE

In response to the Motion's argument that the new fraudulent inducement defense

contradicts the previous admission, when the Court did not grant leave to alter such admissions,

Bektrom argues that it is allowed to plead in the alternative.  (Opp. Br. at p. 29).  Bektrom cites

two out of circuit cases for the unremarkable proposition that a party can assert multiple causes

of action arising out of the same facts.[1]  (Opp. Br. at 29).  These cases have nothing to do with

this situation, where Bektrom previously admitted that the License Agreement was "valid,

binding, and enforceable" (Mot. at ¶¶ 2-4; Complaint at ¶ 22; Answer at ¶ 22; 4.15 Tr. at 15:12-

25), and where the Court dismissed its previous answer in order to give Bektrom leave to replead

certain matters with particularity.  Here, Bektrom has changed its Answer from an admission of

the validity of the License Agreement to a denial.

In response to the Motion's argument that the new fraudulent inducement defense lacks

particularity, including who made the false statement, when, and whether Bektrom relied upon it,

Bektrom conclusorily states that the affirmative defense "contains those very details."  (Opp. Br.

at 29).  A review of the defense shows otherwise.[2]  Bektrom fails to address any of the case law

---

[1] *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F. Supp. 713, 718 (S.D. Ind. 1991) (party allowed to plead breach of contract and rescission); *Wilson v. Popp Yarn Corp.*, 680 F. Supp. 208, 216 (W.D.N.C. 1988) (party allowed to plead breach of contract and fraud).
[2] The Tenth Affirmative Defense alleges only the following:

advanced in the Motion requiring this information.

### III.  MFF IS ENTITLED TO DISMISSAL OF BEKTROM'S COUNTERCLAIMS

Bektrom has alleged four ways that MFF abused its discretion in approving Artwork/Samples.  Each fails to state a claim.

Failure to Review, Let Alone Approve, Artwork.  The Amended Counterclaims provide absolutely no supporting information for this claim (*i.e.*, when these failures allegedly occurred and the nature of the submissions).  Although MFF raised this argument in its Motion, Bektrom's opposition fails to address this deficiency.

Improperly Withholding Approval for Artwork to Extract Payment.  Bektrom similarly fails to address MFF's argument – clearly stated in the Motion – that this claim is simply a recharacterization of the waiver email, which simply stated that MFF could not allow a shipment to occur until it received payment of Bektrom's proposed settlement amount.[3]  In fact, MFF was under no obligation to continue allowing Bektrom to continue allowing Bektrom to obtain the benefits of the License Agreement.  *See Jackson v. Rich*, 499 P.2d 279, 280-81 (Utah 1972) ("[T]he party first committing a substantial breach of contract cannot maintain an action against the other party for a subsequent failure to perform.") (quoting 17 Am.Jur.2d Contracts § 365).

Retracting Approval for Artwork After Bektrom Had Expended Resources.  Bektrom also

---

The Complaint is barred by [MFF's] fraudulent inducement of the License Agreement, including, but not limited to, [MFF's] misrepresentations before Bektrom signed the License Agreement that Debbie Fields was returning to [MFF] and would be promoting the Mrs. Fields' brand in an effort to revive the declining value of the mark.

(Amended Answer at Tenth Affirmative Defense).

[3] Further, Bektrom is arguing out of both sides of its mouth.  On the one hand, it asserts that this email evidences a waiver since MFF's statement that Bektrom must make payment before the order could be shipped fails to show MFF did not accept Bektrom's counteroffer.  On the other hand, Bektrom alleges that this statement constituted a misuse of its discretion under the License Agreement by attempting to obtain payment (before accepting the counteroffer).   (Amended Counterclaims at ¶¶ 24, 34).  In short, if MFF was attempting to obtain payment as alleged by the Amended Counterclaims, there can be no waiver.

fails to address MFF's argument that the emails incorporated into the Counterclaims show that the retraction of approval occurred just hours after the initial approval was granted. This obviously contradicts the allegation that MFF "withdr[ew] approval after Bektrom had expended resources developing and manufacturing the Licensed Products." (Amended Counterclaims at ¶ 10). Instead Bektrom argues that the retraction was improper because Bektrom had an exclusive license for "gift sets." As discussed above, Bektrom only had a license for the specified products identified in the License Agreement.

Refusal to Approve Artwork for Spice Shakers and Grinders. As discussed above, Bektrom has finally identified the documents for the alleged December 2013 submission of Spice Shaker artwork, an unsigned letter allegedly from Ernie Barbella of Bektrom to Dustin Finkel of MFF. However, even if the Court were inclined to accept this allegation as true, by December 2013, Bektrom was in default of its obligation to pay the 2013 Guarantee installment. As noted above, this relieved MFF from its obligations under the Agreement (even assuming that the disapproval of submissions could constitute a breach). *See Jackson*, 499 P.2d at 280-81.

Moreover, Bektrom has still not identified any "bad faith" actions by MFF. The allegation that MFF believed the spice shakers to not be a good fit does not rise to claim for breach of goods faith. Under Utah law, a party may exercise its discretion in furtherance of its business interests: "The good faith performance doctrine may be said to permit the exercise of discretion for any purpose − including ordinary business purposes − reasonably within the contemplation of the parties."[4]  *Oman v. Davis School Dist.*, 194 P.3d 956, 968 (Utah 2008)

---

[4] Bektrom asserts that the parties "did not agree on a formula or test under which [MFF] would exercise its discretion" (Opp. Br. at p. 25), which ignores that the License Agreement provided a formula: MFF can deny Artwork/Samples in its "sole" discretion.

(citation omitted); *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (covenant of good faith cannot be used "to require a party vested with a contract right to exercise that right in a manner contrary to that party's legitimate self-interest") (citation omitted).

In addition, a party is not obligated to exercise its discretion to protect its counterparty's business opportunities, even if the counterparty believes that its profits are being diminished materially.  *See*, *e.g.*, *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1242 (Utah 2004) ("What Albertsons did may not have been nice, but its conduct in vacating the leased premises while continuing to pay rent in order to restrict competition with its new store was not unlawful under the lease."); *Best Rate Towing & Repair, Inc. v. Ziplocal, L.P.*, 2012 WL 627668, at *4 (D. Utah Feb. 24, 2012) (dismissing claim for failure to meet plaintiff's desired distribution levels where contract provided defendant with the discretion to determine the level of distribution); *Steak n Shake Enters., Inc. v. Globex Co., LLC*, --- F. Supp. 3d ---, 2015 WL 3883590, at *16-17 (D. Colo. June 23, 2015) (applying Colorado and Indiana law) (holding that franchisor's decision not to change the permitted menu and pricing so that franchisee could achieve profitability did not constitute a breach of the covenant of good faith and fair dealing).

In short, MFF was not obligated to approve any Artwork/Samples for spice shakers and grinders since "there is no violation of the duty of good faith, as a matter of law, where a party is simply exercising its contractual rights." *Howe v. Professional Manivest, Inc.*, 829 P.2d 160, 163 (Utah Ct. App. 1992) (citation omitted) (lessors therein not obligated to consent to every lease assignment).

Finally, since Bektrom's counterclaims have no merit, as discussed above, and the License Agreement was properly terminated by MFF, Bektrom's counterclaim for declaratory

relief should be dismissed.  *See Utah Animal Rights Coalition v. Salt Lake Cty. Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) (McConnell, J., concurring) ("a declaratory judgment involving past conduct that will not recur is not justiciable.")

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court dismiss Bektrom's Amended Answer with Counterclaims, and awarded such other and further relief as it may find appropriate.

DATED this 30th day of July, 2015

Respectfully submitted,

KIRTON MCCONKIE

By: /s/ Adam M. Kaas
      Rod N. Andreason
      Adam M. Kaas
      Attorneys for Plaintiff Mrs. Fields
      Franchising, LLC

Of Counsel:

`

STORCH AMINI & MUNVES PC

Bijan Amini, Esq. (*Admitted Pro Hac Vice*)
Avery Samet, Esq. (*Admitted Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2015, I caused a true and correct copy of the

foregoing **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED**

**MOTION TO DISMISS DEFENSES AND COUNTERCLAIMS AND MEMORANDUM**

**IN SUPPORT** to be delivered by the method indicated below to the following:


[   ]   U.S. MAIL                    David M. Bennion
[   ]   HAND DELIVERY              *dbennion@parsonsbehle.com*
[   ]   FAX TRANSMISSION       Zack L. Winzeler
[   ]   FEDERAL EXPRESS          *zwinzeler@parsonsbehle.com*
[ X ]  CM/ECF                      Parsons Behle & Latimer
                                          201 South Main Street, Suite 1800
                                          Salt Lake City, UT  84111


                                    /s/ Adam M. Kaas