```
                                                              (1373)

    IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                            CENTRAL DIVISION

_____

MRS. FIELDS FRANCHISING,
LLC, A DELAWARE LIMITED                    CASE NO. 2:14-CV-776
LIABILITY COMPANY,

          PLAINTIFF,

  VS.

BEKTROM FOODS, INC., A                     SALT LAKE CITY, UTAH
NORTH DAKOTA CORPORATION,                  AUGUST 25, 2015

          DEFENDANT.

_____

                PLAINTIFF'S RENEWED MOTION TO DISMISS
                BEFORE THE HONORABLE BRUCE S. JENKINS
                  UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:
                            KIRTON MCCONKIE
                            BY:  ROD N. ANDREASON, ESQ.
                            50 EAST SOUTH TEMPLE,  SUITE 400
                            SALT LAKE CITY, UTAH 84111
                            (801) 328-3600

FOR THE DEFENDANT:
                            PARSONS BEHLE & LATIMER
                            BY:  DAVID M. BENNION, ESQ.
                                 ZACK L. WINZELER, ESQ.
                            201 SOUTH MAIN STREET, SUITE 1800
                            SALT LAKE CITY, UTAH 84111
                            (801) 532-1234

COURT REPORTER:
                            RAYMOND P. FENLON
                            351 SOUTH WEST TEMPLE, #7.430
                            SALT LAKE CITY, UTAH 84101
                            (801) 809-4634
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2                         (1:24 PM)
 3            THE COURT:  Good afternoon.  And why don't we turn
 4    to Mrs. Fields Franchising versus Bektrom Foods.  It's
 5    14-C-776, calendared on a motion to dismiss.  And those who
 6    are making appearances, if you'll make a record.  Tell us who
 7    you are and whom you represent.
 8            MR. ANDREASON:  Good afternoon, Your Honor, Rod
 9    Andreason of Kirton McConkie on behalf of the Plaintiff,
10    Mrs. Fields Franchising.
11            THE COURT:  Okay.
12            MR. BENNION:  Your Honor, David Bennion and Zach
13    Winzeler for the Defendant, Bektrom Foods.
14            THE COURT:  Okay.  You go ahead.
15            MR. ANDREASON:  Thank you, Your Honor.  Your Honor,
16    the heart of this motion lies in two basic principles.  One,
17    you still have to follow the standards of Iqbal and Twombly.
18    You need actual allegations and you need to have, not just
19    conclusions, but plausible ones, plausible -- you need
20    allegations and conclusions.
21        And then, secondly, if you get two chances to file a
22    pleading and you fail to do it correctly, your pleading should
23    be dismissed.  In this case we've examined Bektrom's answer
24    and counterclaim once before.  You reviewed it.  You discussed
25    whether or not it had conclusions or actual allegations.  You
```

1   viewed whether they were plausible or not, and you dismissed
2   it, giving Bektrom the chance to replead and repair its answer
3   and counterclaim.
4       And it did provide more detail.  I'll admit, Your Honor,
5   they've given more facts, but in some areas they have not done
6   any additional facts and they have completely failed to
7   provide plausible facts.
8       It's important I think, Your Honor, that we remember what
9   the forest is here so we don't get lost in the trees.  We have
10  a license agreement, five years, guaranteed payments.  They
11  only made the first payment.  So in 2012 they made their
12  payment, but nothing in 2013, nothing in 2014, your Honor.  So
13  Mrs. Fields was well within its right to say this license
14  agreement is done.
15      So when Bektrom says, well, a few months later we
16  submitted some kind of samples to you, it's too late.  They've
17  had their chance and they failed to the most material aspect
18  of this entire agreement, making their annual guaranteed
19  payments.
20      Mrs. Fields terminated the agreement.  Bektrom owed
21  $754,000.  This doesn't seem to really be in dispute, Your
22  Honor.  At our last hearing you asked Bektrom's counsel, who
23  is here today, looking at just the words of the contract, did
24  you pay them the $750,000?  Counsel responded we did not.
25  Yes, the contract provided for those payments.

1        So when Bektrom complains now that Mrs. Fields didn't
2   review samples they submitted months later, we're comparing
3   September of 2013 to December or later, it's too late.
4   Bektrom has already missed the boat.
5        You reviewed their counterclaim and answer and dismissed
6   it using Twombly's two standards, and again reminding us that
7   there have to be allegations and not conclusions, detail, and
8   they cannot be implausible.
9        Now, you dismissed Bektrom's claims that Mrs. Fields
10  failed to review, let alone approve, artwork, and this is what
11  you said at the hearing, speaking to counsel for Bektrom.
12  Frankly, I'm interested in what was submitted, when it was
13  submitted.  I have got to have, it seems to me, something more
14  than you've got there now.
15       Well, Your Honor, they have amended their answer and
16  counterclaim and they have provided nothing in that regard, no
17  additional supporting information.  This is a reason why this
18  amended answer and counterclaim should be dismissed.
19       Second, you addressed Bektrom's waiver defense in which
20  Bektrom claimed that Mrs. Fields waived the guarantee payments
21  in order to get the royalty payments they were already
22  entitled to get.  Now, this is how Bektrom failed the first
23  time when we talked about this before you.  First, they gave
24  only conclusions, not details.  Second, this alleged agreement
25  actually contradicts the license agreement.  They're supposed

1  to give both, not just one.  And, third, it was completely
2  implausible because if Mrs. Fields is entitled to both the
3  guarantee payments and the royalty payments, why would it give
4  up the guarantee to get some amount of royalty payments?  Why
5  would it agree to permanently give up over $750,000?  Why
6  would it do so in exchange for zero consideration?
7       Now, in its amended answer, to its credit, Bektrom does
8  give more detail, but first it contradicts its prior
9  statements.  First, it says that instead of the oral waiver
10 that it alleged last time when we appeared before you, there
11 was actually a written modification of the license agreement.
12 Then in its opposition frankly gives a third story, both oral
13 and a written, three inconsistent stories, Your Honor.
14      But in this whole arena Bektrom still absolutely fails to
15 address implausibility.  Why does this make any sense that
16 Mrs. Fields would have even made such a deal?
17      Now, Bektrom claimed that Mrs. Fields accepted its offer
18 in writing in its pleading and then omitted to provide that in
19 its answer and counterclaim.  We asked for that, as you may
20 have seen in the exhibits, Your Honor.  They refused to
21 provide that.  So we found what they think -- we think they
22 mean, and they have since confirmed that.
23      Here is what it says, Your Honor.  And this is something
24 that you could read to see if their allegations are plausible.
25 This is Exhibit C to the Andreason declaration for our motion.

```
 1   Mrs. Fields says we are fine to except the proposal but we
 2   cannot release the 190,000 order until we are paid the 40,000.
 3   If we are allied -- aligned, pardon me, we can begin drafting
 4   the documentation.
 5       So clearly Mrs. Fields says, well, we can accept part but
 6   not the other part.  Here is our counteroffer.  There's no
 7   evidence that it was accepted.  They don't claim that it was
 8   accepted.  There's no payment of this $40,000 number.  The
 9   entire basis for this so-called agreement in writing -- which
10   is not a waiver by the way.  That's a written modification --
11   is an e-mail that shows a counteroffer.
12       Now, when we look at plausibility, Your Honor, we're not
13   getting into disputes of fact, this is their plausibility, and
14   it doesn't weigh out.
15       Third, Bektrom provides the new affirmative defense in
16   its answer of fraudulent inducement of the license agreement,
17   which is interesting since they have claims under the license
18   agreement.  So now they're saying in part that it was
19   fraudulently induced.  In fact this contradicts their previous
20   answer where they admitted that it was a valid and binding
21   agreement.  So it's not just alternative pleading, Your Honor,
22   it's contradictory admissions.
23       But those allegations themselves don't give any of the
24   specificity required for fraud allegations under Rule 9(b).
25   Bektrom only says, and I'll quote -- I'll quote -- I'll show
```

1    you the quote in a moment.  Mrs. Fields made, quote,
2    representations before Bektrom signed the license agreement
3    that Debbie Fields was returning to Mrs. Fields and would be
4    promoting the Mrs. Fields brand in an effort to revive the
5    declining value of the Mrs. Fields' marks.
6         Your Honor, I'd submit pretty plainly that doesn't meet
7    Rule 9(b) for pleading fraud with particularity.  And they
8    make allegations, they make claims, that they're entitled to
9    damages for breach of the license agreement.  So that new
10   affirmative defense of fraudulent inducement should fall.
11        Next on the gift sets -- and it's hard to keep some of
12   these straight, Your Honor, so I have to look at my notes to
13   check too.  But let's talk about the gift sets for a moment.
14   Bektrom Claims that because the license agreement makes two
15   references to gift sets, that it now has an exclusive license
16   to sell anything to anyone as long as it's a gift in a set.
17        But, Your Honor, it can't be that broad, and there's no
18   evidence, there's no even allegation, that it is that broad.
19   If it were so, not only could they submit an oven mitt, they
20   could potentially say that a portable stove was part of a gift
21   set, and that they had an exclusive license to provide such
22   gift sets.
23        It's completely implausible.  It contradicts the terms of
24   the license agreement, which only gives three things that they
25   have an exclusive license for:  Spice shakers, spice grinders,

1    dry baking mixes.  That's it.  So to say that we can now do a
2    gift set and no matter what, Love Cooking or any other entity
3    we have an exclusive license to, we have the exclusive right
4    to provide anything that's a gift in a set is completely
5    implausible.  Bektrom has no definition or limitation
6    regarding these gift sets.  They don't even try to make it fit
7    within section four of the license agreement that issues the
8    exclusive agreement.
9        Worse, Bektrom claims that Mrs. Field, quote, withdrew
10   approval after Bektrom had expended resources developing and
11   manufacturing the licensed products.  But, Your Honor, we've
12   provided the actual e-mail they're referencing.  That's
13   Exhibit D to the Andreason declaration.  The withdrawal of
14   approval happened two hours later.
15       Now, I'm not sure what Bektrom thinks it did in those two
16   hours, but it's highly implausible to claim that it expended
17   tremendous resources and is entitled to compensation because
18   of two hours change in withdrawing approval for these gift
19   sets.  In its opposition Bektrom really has no answer for why
20   this discrepancy exists, why it would have these claims based
21   on two hours of delay in the withdrawal time.
22       Next the spice shakers and grinders, Your Honor.  Bektrom
23   provides an unsigned letter purporting to show that in
24   December of 2013 Bektrom submitted artwork and samples for
25   spice shakers and grinders to Mrs. Fields.  But as we've

1    already discussed, this was months after it had already
2    committed the breach of failing to provide the fundamental
3    part of the agreement, that guarantee payment, $150,000, which
4    it frankly hasn't provided since either.
5         As I'm sure you've dealt with many times, under Utah law,
6    and I'm quoting here from Cross v. Olson, referenced from one
7    of our cases in our brief, under the first breach rule, a
8    party first guilty of a substantial or material breach of
9    contract cannot complain if the other party thereafter refuses
10   to perform.  He can neither insist on performance by the other
11   party nor maintain an action against the other party for a
12   subsequent failure to perform.
13        And as you know, on a motion to dismiss we're talking
14   about maintaining an action.  They cannot maintain an action
15   for events after September 30, 2013, and that's what they're
16   trying to do.
17        Ultimately, Your Honor, this is a plain contract dispute.
18   They admit they didn't make the payments.  They have several
19   responses but none of them are plausible.  They've been given
20   a chance to provide additional information, to make the detail
21   sufficient and not just be conclusions, and also to make
22   plausible ones, but they haven't done it.
23        As we pointed out last time, on a policy basis, if we
24   proceed past this point in the case, we're going to have
25   mountains of discovery, a lot of waste and time and money over

```
 1    a fairly clear contract breach with no plausible response.
 2         The Supreme Court in Twombly says we dismiss such claims,
 3    and then here is the quote, lest a plaintiff with a, quote,
 4    largely groundless claim be allowed to take up the time of a
 5    number of other people, with the right to do so representing
 6    an in terrorem increment of the settlement value, closed
 7    quote.
 8         Your Honor, this Court has already dismissed Bektrom's
 9    answer and counterclaim once for lack of specificity and
10    plausibility.  You gave Bektrom another chance to plead, and
11    they've added some specifics and missed others.  Clearly they
12    have not provided the plausibility, and therefore the Court
13    should dismiss their answer and counterclaim.  Thank you, Your
14    Honor.
15              MR. BENNION:  Your Honor, counsel has been painting
16    with a pretty broad brush.  Let's talk about the shakers
17    and -- the spice shakers and spice grinders for a minute.
18    First of all, right in the contract, it's an exclusive
19    contract, with a license to use Mrs. Fields' name, brands,
20    logos and trademarks on spice shakers and spice grinders.
21       Mrs. Fields took a $75,000 upfront payment at the time of
22    the contract's signing for that right.  Never did Mrs. Fields
23    give the right to Bektrom to use its names, its marks and so
24    forth on spice shakers or spice grinders.
25         Counsel has just said two times that reference, well,
```

1  that didn't happen until 2013, and they were already behind
2  and that was the basis.  That was never a basis stated by
3  Mrs. Fields in realtime.
4      And what he's doing, as he did in the brief, just simply
5  ignoring allegations in the amended counterclaim.  For
6  example, in paragraph 11 of the counterclaim it states in
7  2012 -- that's a time frame that he just admitted Bektrom was
8  current.  In 2012 Bektrom submitted artwork samples for spice
9  shakers and grinders to Mrs. Fields.  Mrs. Fields'
10 representative, Dustin Finkel, told Bektrom's representative,
11 Aldon Reed, on at least two occasions in 2012 that Mrs. Fields
12 was not sure that spice shakers and spice grinders were a good
13 fit for Mrs. Fields' brand.
14     In other words, they gave a license to put the name on
15 those items, and they took money for that license, and then
16 when artwork and samples were submitted requesting approval
17 for those very items that are right in the contract, they just
18 said, ah, we don't think that's a good fit.  That happened at
19 a time when Bektrom was current, not when they were in breach.
20 That is a breach of contract.  When --
21         The Court:  You claim an early breach on the part of
22 the Plaintiff?
23         MR. BENNION:  Pardon?
24         THE COURT:  I say you claim an early breach on the
25 part of the Plaintiff?

1      MR. BENNION:  Yes.  Yes, absolutely.  In 2012 they
2 refused --
3      THE COURT:  Okay.
4      MR. BENNION:  And we have a specific allegation,
5 which he just completely ignored.  He went to paragraph 12
6 where we make a similar --
7      THE COURT:  We're really concerned here with the
8 sufficiency of the pleadings.  The motion to dismiss is
9 essential here, a motion in reference to the pleadings.
10     MR. BENNION:  Well, and that's where they really get
11 the horse in front of the cart, Judge.  We make specific
12 allegations about date, time, people, and specific
13 communications, and then he says, well, you're not giving us
14 detail.
15     THE COURT:  Tell me your justification for, if I
16 remember correctly, the last defense or counterclaim, namely
17 seeking a declaratory judgment.  What are you asking me to
18 declare?
19     MR. BENNION:  Well, it's probably redundant, but
20 it's the --
21     THE COURT:  If it is, it's dismissed.
22     MR. BENNION:  It has one viable basis that's
23 independent, Judge, which is this.  They want a payment in the
24 future for the minimum royalties for years that haven't even
25 happened yet when they have been in breach themselves.  We

```
 1    just want --
 2            THE COURT:  It's a breach question.
 3            MR. BENNION:  Pardon?
 4            THE COURT:  It's a breach question.  You claim
 5    counter breaches basically.
 6            MR. BENNION:  We say we didn't pay because you
 7    didn't perform.
 8            THE COURT:  Uh-huh.
 9            MR. BENNION:  There's conditions precedent to our
10    payment.  Obviously the condition is you're going to let us
11    use your name.  If they don't let us use their name, how are
12    they entitled to payment?
13            THE COURT:  Okay.
14            MR. BENNION:  And so --
15            THE COURT:  Well, I understand that.  I just don't
16    understand the effort at getting a declaration of something.
17            MR. BENNION:  It's just to try to foreclose a future
18    obligation that they claim that we don't think should exist.
19            THE COURT:  Well, why are we talking about the
20    future?  You both claim -- you both asserted breaches.
21            MR. BENNION:  True.
22            THE COURT:  If they breached, you're not enforcing a
23    contract.  You're dealing with the breach.
24            MR. BENNION:  And so it's really an alternative --
25    it's an alternative claim that -- that if you grant our -- if
```

1  you were to grant our counterclaim on breach, we wouldn't need
2  that remedy.
3      THE COURT: I don't think you need it at all, and
4  I'm going to dismiss it. We don't need it. It's redundant,
5  as you acknowledge. It's implicit in other allegations.
6      MR. BENNION: Agreed. Your Honor, in addition to
7  the spice shakers I wanted to comment about the mixes. Again,
8  this is where counsel paints with a broad brush claiming, hey,
9  mixes aren't even part of this contract. But right in the
10 definition of licensed products, which is section four of the
11 agreement, it says the following merchandise utilizing,
12 bearing, or otherwise relating to the property, colon, and
13 then it starts listing things, spice shakers, spice grinders,
14 mix -- dry baking mixes for cupcakes, cookies and cakes,
15 pancakes and so forth. The gift sets include and utilize
16 those very things.
17    Then you go to paragraph eight, which is the royalty
18 rate, and it says for baking mixes and gift sets it's five
19 percent. Now he's trying to argue that gift sets aren't part
20 of this contract. Clearly it is.
21     THE COURT: Well, are gift sets of what?
22     MR. BENNION: Gift sets that include like a dry
23 brownie mix with a pan, or a cake mix with an oven mitt.
24 They're like a -- they're combo sets.
25    And here is the other thing that he omitted. They

1    approved gift sets at certain times, and then Bektrom made
2    them and sold them.  But then at a later time they come along
3    and say, well, we're not going to approve those anymore
4    because that might be in conflict with one of our other
5    licensees.  And when you --
6              THE COURT:  It's obvious that you folks have got --
7              MR. BENNION:  Pardon?
8              THE COURT:  You've got conflicts.
9              MR. BENNION:  Yeah, because in paragraph six it
10   talks about what's the exclusivity of this contract?
11   Exclusive.  They told us we had an exclusive contract for gift
12   sets.  Then they tell us, ah, we're not sure we're going to
13   approve these because that will conflict with our other
14   licensee.  And so that is a breach, Your Honor.
15       They can't be paid money when they refused to let us use
16   the names that they licensed us to be able to use.  It is
17   plausible.  There is a mountain of evidence, and we're way
18   ahead of ourselves on the evidence, especially when you think
19   about the standards of Rule 12.  They draw inference after
20   inference their way from the documents.
21             The Court:  I'm interested only in the adequacy of
22   the pleadings at this point.
23             MR. BENNION:  We went above and beyond, Your Honor.
24   When we made our answer in the first place we had basic
25   information from our client, who is in New Jersey, and so we

1  answered. And then Your Honor dismissed the answer. And so
2  we went back to the well and said, okay, we need details. And
3  so, for example, I was standing right here talking about the
4  oral conversation that my client had told me about in which
5  they had agreed to waive the royalty. He said why would they
6  do that? There's a very easy answer. You can get half a loaf
7  or --
8          THE COURT: Just tell me why your pleadings are
9  adequate.
10         MR. BENNION: Pardon?
11         THE COURT: Tell me why your pleadings are adequate.
12         MR. BENNION: Because they allege specific facts
13 that on their face are plausible to show that they breached
14 the contract.
15         THE COURT: Okay. Well, let him respond and we'll
16 go from there.
17         MR. ANDREASON: Your Honor, I believe I've heard
18 only two things that I could respond to that even merit a
19 response. One is that part of their allegations is that they
20 claim something happened in 2012, and that is paragraph 11.
21 They claim in that paragraph they submitted artworker samples
22 and were told by Dustin Finkel on some two occasions, that
23 they don't know when or how, that Mrs. Fields wasn't sure that
24 spice shakers were a good fit.
25      Now, Your Honor, that does predate the September 30, 2013

1  material breach.  I concede that.  However, these allegations
2  do not have any specificity as to when they occurred.
3           THE COURT:  Well, that's one of the interesting
4  opportunities that you have to use written interrogatories or
5  take somebody's deposition.  Tell me why their pleadings are
6  inadequate.  I've dismissed the effort to get a declaratory
7  judgment as to one.  Tell me why the remaining counterclaim or
8  defenses are inadequate.
9           MR. ANDREASON:  Your Honor, as to fraudulent
10 inducement, as I mentioned, not adequately pleaded, doesn't
11 meet Rule 9(b), no specific facts.  So that's fraudulent
12 inducement, Your Honor.
13          THE COURT:  And while facts are essential, the
14 Supreme Court didn't repeal the short and plain statement
15 provision in the rules.  It indicated that there ought to be
16 enough to provide plausibility.  And, quite frankly, counsel,
17 I've looked through the material, I've looked through the
18 pleadings, I've digested those as best I can.  I thought your
19 motion was good in reference to the declaratory judgment.
20 We've granted that.  Send me an order.  As to the rest, I
21 think it's adequate, and we'll go from there.  The motion to
22 dismiss is denied.
23     I'll save you a trip if you want to set up a scheduling
24 time right now.  File your response -- if you'll be kind
25 enough to file your response within 10 days.

```
 1            MR. BENNION:  The order you mean?  Oh, oh, sorry.  I
 2   misunderstood.
 3            MR. ANDREASON:  To the counterclaim, Your Honor?
 4            THE COURT:  I'm sorry?
 5            MR. ANDREASON:  Mrs. Fields' response to the
 6   counterclaim, Your Honor?
 7            THE COURT:  Yes.  If you'll do that within 10 days.
 8   Assuming that you're going to do that, I can save you a trip
 9   if you want to tell me how soon you can get your discovery
10   work done.
11            MR. ANDREASON:  Your Honor, I probably would have to
12   have that extra trip because I don't have that kind of time
13   schedule laid out in front of me.
14            THE COURT:  Okay.  That's fine.
15            MR. BENNION:  What I propose, Your Honor, is that we
16   get together and make a proposed order.
17            THE COURT:  That would be fine, but please don't use
18   the one that the magistrate uses.
19            MR. BENNION:  Okay.  We'll tailor it to our specific
20   case.
21            THE COURT:  Simple, target dates, times.
22            MR. BENNION:  Will do.
23            THE COURT:  Anything else we need to talk about?  If
24   not, thanks.  Appreciate your help.
25                    (HEARING CONCLUDED AT 1:50 PM)
```

```
 1
 2
 3
 4
 5                      Certificate of Reporter
 6       I, Raymond P. Fenlon, Official Court Reporter for the
 7   United States District Court, District of Utah, do hereby
 8   certify that I reported in my official capacity, the
 9   proceedings had upon the hearing in the case of
10   Mrs. Fields Franchising, LLC Vs. Bektrom Foods, Inc., case
11   No. 2:14-CV-776, in said court, on the 25th day of August,
12   2015.
13       I further certify that the foregoing pages constitute
14   the official Transcript of said proceedings as taken from my
15   machine shorthand notes.
16       In witness whereof, I have hereto subscribed my name
17   this 27th day of August, 2015.
18
19
20
21                                         /s/ Raymond P. Fenlon
22
23
24
25
```