IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BEKTROM FOODS, INC.,<br><br>Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br><br>Case No. 2:14-CV-00776-BSJ<br><br>District Judge Bruce S. Jenkins |

This matter came before the Court for trial July 19, 2016 and July 20, 2016. Rod N. Andreason and Jamie Leggett appeared on behalf of Mrs. Fields Franchising, LLC ("MFF"). David M. Bennion and Zack L. Winzeler appeared on behalf of Bektrom Foods, Inc. ("Bektrom").

Having considered the evidence, the arguments of counsel, the parties' briefs, and the relevant law, the Court took the matter under advisement.

## BACKGROUND

In 2011, Bektrom and MFF entered into a Merchandising License Agreement ("License Agreement") which allowed Bektrom to manufacture, sell, and/or distribute licensed products under the trademarked Mrs. Fields brand.[1] In exchange, Bektrom promised to make royalty and minimum guarantee payments (a total of $920,000) throughout the term of the agreement.[2] Bektrom paid the first installment payment of $100,000 by September 30, 2012.[3] But Bektrom

---

[1] *See* Parties' Trial Ex. 12, Mrs. Fields Franchising, LLC Merchandising License Agreement.
[2] *Id.* at provision 10.
[3] Trail Brief by Plaintiff Mrs. Fields Franchising, CM/ECF no. 57, para. 12 (July 18, 2016).

1

failed a year later to pay the $150,000 guarantee installment by September 30, 2013.[4] Instead, Bektrom only paid the quarterly royalty payments, a total of $65,512, which allegedly represented 5% of net sales of marked products.[5] Bektrom made no additional payments to MFF thereafter.

On April 11, 2014, MFF's counsel sent Bektrom a notice of intent to place Bektrom into default pursuant to the License Agreement.[6] Emails between MFF and Bektrom representatives were exchanged in response.[7] This email correspondence resulted in a modified License Agreement ("Waiver Agreement") under which MFF promised to waive the prior License Agreement's minimum guarantee payments and Bektrom promised to pay $75,000 over a five-month period and pay only royalties on goods sold.[8] The terms of the Waiver Agreement are reflected in MFF's accounting records and, in part, in a draft Waiver Agreement that MFF created.[9] Testimony at trial established that the draft Waiver Agreement was never sent to Bektrom or signed by either party. Bektrom never made a payment pursuant to the Waiver Agreement.

## DISCUSSION

The substantive issues of this case turn on whether the License Agreement was modified to waive minimum guarantee payments and to establish a new payment schedule of future payments based on royalties alone. Bektrom argues such modification occurred and raises such

---

[4] *Id.* at para. 13.
[5] *Id.* at para. 14.
[6] Ex. 63, Letter from Lee Wright, Kirton McConkie to Bektrom Foods, Aldon re: Notice of Intent to Default.
[7] Ex. 65, Email Chain: Most Recent from Dustin Finkel to Ernie Barbella re: Update?. These emails were exchanged between April 11–14, 2014.
[8] *Id.* Aldon Reed made a counteroffer on April, 11, 2014 in response to Dustin Finkel's offer earlier the same day. This counteroffer was accepted by Dustin Finkel on April 13, 2014.
[9] Ex. 85, Email from Dustin Lyman to Michael Chao re: License Currently Due.

2

modification as an affirmative defense.[10] The Court finds that the evidence presented at trial supports Bektrom's position. The License Agreement was modified to exchange the minimum guarantee payments for $75,000 and future payments based solely on royalties on goods sold. The modified License Agreement – the Waiver Agreement – resolves the issue of damages owed to MFF.

Utah law holds that "'[a] waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit or advantage, knowledge of its existence, and an intention to relinquish it.'"[11] Identifying whether a waiver exists is a "highly fact-dependent question"[12] and typically requires that a court consider the totality of the circumstances.

In the present case, all three elements of a valid waiver have been demonstrated through various pieces of evidence presented at trial. First, emails between MFF representatives, Aldon Reed and Ernie Barbella, and Bektrom representative, Dustin Finkel, establish that the terms of the Waiver Agreement were discussed, offered by Bektrom, and accepted by MFF.[13] In this exchange, Bektrom promised to make a payment of $75,000 over a five-month period and MFF promised to waive its right to the remaining minimum guarantees under the License Agreement.[14] Furthermore, these emails indicate MFF recognized that once the parties were aligned, they "could begin drafting up the documentation" to the Waiver Agreement.[15]

---

[10] *See* Third Affirmative Defense in Plaintiff's Amended Answer to Complaint, Amended Counterclaim against Mrs. Fields Franchising, CM/ECF No. 23 (May 5, 2015).
[11] Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n, 857 P.2d 935, 942 (Utah 1993) (quoting Phoenix Ins. Co. v. Heath, 61 P.2d 308, 311–12 (1936)).
[12] State v. Pena, 869 P.2d 932, 938 (Utah 1994); Olympus Hills, 889 P.2d 445, 462 (Utah Ct. App. 1994) (noting that "whether a party has waived a right is generally a factual question").
[13] Ex. 65.
[14] *Id.*
[15] *Id.* Dustin Finkel writes that "[i]f we are aligned, we can begin drafting up the documentation" in his email to Aldon Reed and Ernie Barbell dated April 13, 2014.

3

Second, MFF created a draft Waiver Agreement which reflected in part the terms and dates discussed in the April email exchange between the parties. On April 30, 2014, Dustin Finkel sent an email to MFF employees Libby Wilson and Stephanie Brady with subject title "Second Amendment to Bektrom License Agreement – Version 2."[16] Attached to this email was a draft of the Waiver Agreement which, among other things, mirrored some of the terms considered between the parties in their earlier email exchange.[17]

Finally, internal emails between MFF representatives indicate that MFF acknowledged the existence of the Waiver Agreement in its own <u>accounting records</u>.[18] On May 29, 2014, Dustin Lyman sent an email to Michael Chao projecting what was currently owed to MFF based on their contracts with various entities. In particular, Mr. Lyman stated that "Bektrom is based on the new amendment."[19] This email also included an accounting table that demonstrated MFF "forgave $920K contract minimum" owed by Bektrom.[20]

The email exchanges, the draft of the Waiver Agreement, and the accounting notation that forgave the minimum guarantees all indicate that MFF intentionally relinquished its right to receive the minimum guarantees under the License Agreement. In exchange for this waiver, Bektrom promised to pay $75,000 over a five-month period, which to date has not been fulfilled.

---

[16] Ex. 75, Email from Dustin Finkel to Libby Wilson; Stephanie Brady re: Second Amendment to Bektrom License Agreement – Version 2 with redacted attachments. The attachment to this email was originally redacted but it was ultimately received into evidence. Additionally, on May 5, 2014, Libby Wilson emailed Dustin Finkel to notify him that in her updated licensing model, "Bektrom has been updated to reflect the Second Amendment as we discussed last week." The account table attached this email anticipates a payment of $75,000 from Bektrom due before October 1, 2014. *See* Ex. 79, Email from Libby Wilson to Dustin Finkel re: Licensing Model and next Steps with attachment (redacted).
[17] *Id.*
[18] Ex. 85.
[19] *Id.*
[20] *Id.*

4

## CONCLUSION

From the foregoing, the Court holds that Plaintiff is entitled to Judgment against the Defendant in the sum of $75,000 plus interest, as well as an accounting for inventory on hand and royalty on sales made, if any.

Counsel for Plaintiff to submit a suggested form of Judgment to the Court within 7 days.

DATED this 27th day of July, 2016.

Bruce S. Jenkins
U.S. Senior District Judge